Herman **YANDLE** et al., Plaintiffs,

v.

**PPG INDUSTRIES, INC.**, et al., Defendants.

No. TY-74-3-CA.

United States District Court, E. D. Texas, Tyler Division.

Dec. 31, 1974.

Scott Baldwin, Jones, Jones & Baldwin, Marshall, Tex., Frederick M. Baron, Mullinax, Wells, Mauzy & Baab, Inc., P.C., Dallas, Tex., Rex Kirby, Tyler, Tex., for plaintiffs and intervenors.

Jack W. Flock, Ramey, Flock, Hutchins, Grainger & Jeffus, Tyler, Tex., for defendants, PPG Industries, Inc. and Dr. Lee Grant.

John H. Hall, Strasburger, Price, Kelton, Martin & Unis, Dallas, Tex., for defendant, Corning Glass Works.

William N. Hamilton, Vial, Hamilton, Koch, Tubb, Knox & Stradley, Dallas, Tex., and Thomas J. Reinstadtler, Jr., Pittsburgh, Pa., for defendant, The Industrial Health Foundation, Inc.

Thomas W. Hathaway, Hathaway & Jackson, Tyler, Tex., for defendant, The Asbestos Textile Institute.

Preston Shirley, Mills, Shirley, Mc-Micken & Eckel, Galveston, Tex., for defendant, Pittsburgh Corning Corp.

W. Richard Bernays, Touchstone, Bernays, & Johnston, Dallas, Tex., for defendants, North American Asbestos Corp., EGNEP Ltd., and Cape Asbestos Co., Ltd.

## MEMORANDUM AND ORDER

STEGER, District Judge.

This is a massive tort action brought by former employees and survivors of former employees of the Pittsburgh Corning Corporation Asbestos plant that was located in Tyler, Texas. The question before the Court is whether this case should proceed as a class action under the provisions of Rule 23(b)(3). Before passing on this question, it will be necessary for the Court to review the background of this litigation and the law on the use of class actions in mass tort cases.

By the way of history, Pittsburgh Corning purchased the plant in question from Union Asbestos and Rubber Company and began operations in 1962, producing asbestos insulation materials. The plant continued operations over a ten year period through February of 1972, when it closed its doors forever. The records of Pittsburgh Corning Corporation show that during the plant's existence some 570 employees were exposed to asbestos dust and these employees may be broken down into the following categories:

| Period of Time Employed | Number of Employees | Percentage of Total |
|---|---|---|
| Less than a Week | 81 | 14.2% |
| 1 Week to 1 Month | 132 | 23.2% |
| 1 Month to 1 Year | 212 | 37.2% |
| 1 to 5 Years | 95 | 16.7% |
| 5 to 10 years | 22 | 3.86% |
| Over 10 years | 28 | 4.9% |

These persons were employed in several different positions at the plant and they were, therefore, exposed to varying concentrations of asbestos dust during their periods of employment.

Suit was brought originally against nine defendants in January, 1974, by six former employees and one survivor of a former employee of Pittsburgh Corning on behalf of themselves and others similarly situated. These plaintiffs allege that due to exposure to asbestos fibers over a lengthy period of time that they "suffer from various stages of asbestosis and/or lung cancer and/or other pulmonary disease."

Different theories of recovery were asserted against the various defendants. Negligence is attributed to PPG Industries and Corning Glass Works for failing to correct the deficiencies at the Tyler plant and in failing to warn the employees of the danger of asbestos exposure. Additionally, plaintiffs contend that Dr. Lee Grant, as an agent or employee of PPG, knew the hazards posed to the workers' health, yet he failed to advise such workers of the hazards and was therefore negligent. Essentially the same allegations are made against the Industrial Health Foundation. As to the defendant, Asbestos Textile Institute, plaintiffs claim that this unincorporated association was negligent because it impeded the flow of information about the health hazards involved in asbestos manufacturing. These plaintiffs claim that all of these actions constituted gross negligence on the part of each defendant.

The plaintiffs assert a strict liability theory against North American Asbestos, E.G.N.E.P., Limited, and Cape Asbestos Company. They allege that these defendants were in the business of mining and selling raw amosite-asbestos to Pittsburgh Corning and they failed to warn the plaintiffs of the danger, thereby rendering them strictly liable. Finally, as to the plaintiffs' employer, Pittsburgh Corning, it is alleged that they are liable for exemplary damages under the Texas Workmen's Compensation

Act[1] to all statutory beneficiaries of deceased employees who died as a result of their alleged gross negligence. Plaintiffs allege total actual and exemplary damages for the class to be at least one hundred million dollars.

Shortly after this complaint was filed, another former employee of Pittsburgh Corning, Lester Kay, filed a separate action in this Court alleging essentially the same causes of action against the nine defendants as the original plaintiffs. This plaintiff specifically omits any class action allegations in his complaint and in fact opposes the request by the original plaintiffs for class action certification. Thereafter, the *Kay* case was consolidated with the original case for discovery purposes.

On March 6, 1974, Lindell Lee Dean, a former employee of Pittsburgh Corning's predecessor, Union Asbestos, intervened in the *Yandle* case. Dean sued the same nine defendants generally asserting the same theories as the other plaintiffs, but he differed in that he alleged fraudulent concealment and violation of Uniform Commercial Code warranties.

To date, there are now some 135 plaintiffs involved in both the *Yandle* and *Kay* cases and they are represented by four different attorneys.

In their answers to these complaints the defendants assert various affirmative defenses, in addition to denying the allegations of each plaintiff. These defenses include assumption of the risk, contributory negligence, statute of limitations, payment and release, fellow servant, estoppel and res judicata. Defendant, Pittsburgh Corning, as well as Corning Glass Works, PPG Industries and Dr. Grant contend that the plaintiffs are barred under the Texas Workmens' Compensation Act.

In passing upon the class action question presented herein, the Court will confine its discussion to the liability issues, since the plaintiffs appear to have conceded at the December 17, 1974, hearing on this question that the damage issues are not proper for class treatment because they require individualized determination.

The plaintiffs in this case have the burden of proof of showing that this case should be certified as a class action. Rossin v. Southern Union Gas Co., 472 F.2d 707 (10th Cir. 1973); Poindexter v. Teubert, 462 F.2d 1096 (4th Cir. 1972). In order for an action to be maintainable as a class action, the following four requirements of Rule 23(a) must be met:

"(1) the class is so numerous that joinder of all members is impractical, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." 28 U.S.C.A. Rule 23(a).

In addition to this, the plaintiffs must satisfy one of the provisions of 23(b). In this case the plaintiffs claim a (b)(3) class action. To maintain a (b)(3) class action the Court must make two findings. First, the questions of law or fact that are common to the class as a whole must predominate over the questions affecting the individual members only. Secondly, that the class action device must be superior to other available methods of adjudication. In deciding whether a case should proceed under (b)(3), Rule 23 directs the Court to consider the following factors:

"(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of

---

1. 22 Vernon's Ann.Civ.Stat. Art. 8306.

concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." 28 U.S.C.A. Rule 23(b)(3).

Class actions have had limited application in the past in mass tort cases, partially due to the recommendation of the Advisory Committee on Rules. In its 1966 revision of Rule 23, the Advisory Committee stated:

> " . . . A 'mass accident's resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses of liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried. . . . " 28 U.S.C.A. Rule 23, Notes of Advisory Committee on Rules, 1966 Amendment.

The policy reasons for the disallowance of class actions in mass tort cases generally fall into three categories. First of all there is the general feeling that when personal injuries are involved that each person should have the right to prosecute his own claim and be represented by the lawyer of his choice. Secondly, that the use of this procedure may encourage solicitation of business by attorneys. And finally that individual issues may predominate because the tortfeasor's defenses may depend on facts peculiar to each plaintiff. 7A Wright and Miller, Federal Practice and Procedure, § 1783 (1972).

There are situations where the class action device may properly be used in mass accident cases, at least for the common questions that will apply to each class member equally. Thus, in Hernandez v. Motor Vessel Skyward, 61 F.R.D. 558 (S.D.Fla.1973), the Court utilized it to try a single issue only: Whether the defendant was negligent in preparing the food and water that caused the passengers on the M/V SKYWARD to become ill. The Court found that the plaintiff's other theories, breach of contract, negligence in medical care and implied warranty of fitness, as well as the question of proximate causation were not proper for class treatment. In American Trading and Production Corp. v. Fischbach & Moore, Inc., 47 F.R.D. 155 (N.D.Ill.1969), the Court allowed a class action to be maintained on the liability issues and reserved the damage questions for individual treatment. That case involved a suit by some 1200 exhibitors of housewares who suffered losses because of a fire at the exhibition hall. The Court said that class treatment would be proper on the liability issue because identical evidence would be required to establish the origin of the fire, the parties responsible, and proximate cause. A similar opinion was expressed by the Court in Petition of Gabel, 350 F.Supp. 624 (C.D.Cal.1972), a case which involved a collision between an airliner and a military jet. In that case the Court stated that the liability issues could expeditiously be treated as a class action because there was one common set of operative facts and a single wrongful invasion of a single primary right was involved. The damage issues were to be tried separately because there was "a peculiar and different set of facts applicable to the amount of damages of each different plaintiff in the class." 350 F.Supp. at 628.

Other courts facing this question have reached contrary conclusions and have refused to allow a class action to be maintained on any of the issues in the case. In Hobbs v. Northeast Airlines, Inc., 50 F.R.D. 76 (E.D.Pa.1970), some 32 persons were killed in an air crash which also left ten survivors. In deciding that common questions of law and fact did not predominate over questions affecting the individual members, the Court said:

> "But irrespective of similarities or dissimilarities in the legal standards

to be applied to a particular defendant, it is clear that each claimant in this situation may properly be regarded as having a legitimate interest in litigating independently. Not only do the claims vitally affect a significant aspect of the lives of the claimants (unlike the usual class action, where individual claims are usually somewhat peripheral to the lives of the claimants), but there is a wide range of choice of the strategy and tactics of the litigation. Some claimants may well evaluate their chances against certain potential defendants as better than against others." 50 F.R.D. at 79.

The Court went on to say that the class action device would not be superior to other available methods because persons wishing to join the litigation could intervene if they wished and the case would proceed under the Multidistrict Litigation Statute.

In a case which involved the crash of a school bus, the Court in Daye v. Commonwealth of Pennsylvania, 344 F.Supp. 1337 (E.D. Pa.1972), aff'd, 483 F.2d 294 (3rd Cir. 1973), held that although liability would be a common issue, that the cause could not be maintained as a class action. After taking note of the advisory committee recommendation on the use of class actions in mass accident cases, the Court concluded that in view of the fact that there were two actions presently pending and that there would be personal injury *and* death claims involving different measure of damages, a class action would be improper under Rule 23(b)(3). 344 F.Supp. at 1343; See also Boring v. Medusa Portland Cement Co., 63 F.R.D. 78 (M.D.Pa.1974); Wright v. McMann, 321 F.Supp. 127, 137 (N.D.N.Y.1970), modified 460 F.2d 126 (2d Cir. 1972).

■ In examining the case at bar, the Court is at first troubled by the ju-risdictional problems which may arise in allowing this diversity case to proceed as a class action. In Zahn v. International Paper Company, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), the Supreme Court held that not only the named but also the unnamed potential class members must satisfy the jurisdictional amount. This Court is in agreement with the District Court in Boring v. Medusa Portland Cement Co., supra, that Rule 23 may be utilized in a diversity suit for damages *only* when all possible potential class members can satisfy the $10,000.00 jurisdictional requirements. This Court remains unconvinced that those employees who worked at the plant for a week or a month could affirmatively show that they have been damaged in an amount exceeding the requisite jurisdictional amount.

Setting this problem aside and assuming for the purpose of argument that the plaintiffs have established the four requirements set forth in Rule 23(a), the Court is of the opinion that this case is not proper for (b)(3) class certification because the plaintiffs have not shown that the questions common to the class predominate over the questions that affect the individual members. Further, the Court is of the opinion that a class action is simply not the superior method for adjudication of this cause.

### *The Common Questions Do Not Predominate*

■ As noted previously, the Pittsburgh Corning plant was in operation in Tyler for a ten year period, during which some 570 persons were employed for different periods of time. These employees worked in various positions at the plant, and some were exposed to greater concentrations of asbestos dust than were others. Of these employees it is only natural that some may have had occupational diseases when they entered their employment for Pittsburgh Corn-

ing. There are other issues that will be peculiar to each plaintiff and will predominate in this case, such as: The employee's knowledge and appreciation of the danger of breathing asbestos dust and further, whether the employee was given a respirator and whether he used it or refused to use it. Additionally, as to the defendant, Pittsburgh Corning, the only persons who could maintain an action would be the survivors of employees who were employed by that company. These are individual questions peculiar to each potential class member.

Additionally, the plaintiffs have asserted various theories of recovery against the defendants, and the nine defendants have alleged differing affirmative defenses against the plaintiffs. For example, the statute of limitations may bar some plaintiffs, but not others. During the ten year period the state of medical knowledge was changing, which has a significant bearing on the defendants' duty to warn of dangers. Taking all these factors into consideration, the Court is convinced that the number of *uncommon* questions of law and fact would predominate over the common questions, and the case would therefore "degenerate . . . . into multiple lawsuits separately tried." 28 U.S.C.A. Rule 23, Notes of Advisory Committee on Rules, 1966 Amendment.

This case is very different from the single mass accident cases that have in the past allowed a class action to proceed on the liability issues. Those cases have normally involved a single tragic happening which caused physical harm or property damage to a group of people, and affirmative defenses are absent. Usually, one set of operative facts will establish liability. Here we have two lawsuits covering a ten year span of time in which the nine defendants acted differently at different times. The Court is in agreement with the defendant that there is not a single act of negligence or proximate cause which would apply to each potential class member and each defendant in this case.

The plaintiffs placed great reliance at the hearing on this question on the case of Biechele v. Norfolk & Western Railway Co., 309 F.Supp. 354 (N.D.Ohio 1969), which they contended was very similar to the instant case because it involved a continuing tort over a period of years. In *Biechele* a group of landowners brought an action for injunctive relief and damages against the defendant for operating its coal loading facilities as a nuisance. At the outset, it should be noted that the *Biechele* Court did not have the Supreme Court's decision in *Zahn* when it rendered its opinion. This seriously limits the precedential value of the *Biechele* case. Further, the *Biechele* case was brought under the provisions of 23(b)(1) and (2) for damages and injunctive relief, unlike the present case which is a (b)(3) damage case only. In the *Biechele* case the Court *began* its inquiry by first assuming that the injunctive and damage claims were both certifiable class actions. Boring v. Medusa Portland Cement Co., supra. After stating this, the Court concluded that it would assume jurisdiction over the principal claim, which was injunctive in nature, and then, in the interest of judicial efficiency, the Court found that it would retain jurisdiction over the damage claims. As was pointed out by the Court in *Boring,* supra, " . . . the *Biechele* precedent nevertheless is based on discretionary jurisdiction applied *if* the court certifies the injunction as a class action." 63 F.R.D. at 83. There is no injunctive relief requested in this case.

### A Class Action Is Not The Superior Method

There are several reasons why this Court feels that a class action would not be the superior method for adjudication of this cause. A class action certifica-

tion would entail costly and time consuming notice procedures and record keeping on those who would wish to "opt-out." Further, because of the nature of the injuries claimed, there may be persons that might neglect to "opt-out" of the class, and then discover some years in the future that they have contracted asbestosis, lung cancer or other pulmonary disease. These persons would be bound by decision rendered in this litigation. Finally, the Court finds that the members of the purported class have a vital interest in controlling their own litigation because it involves serious personal injuries and death in some cases. See Hobbs v. Northeast Airlines, supra. This is demonstrated by the fact that there are presently four sets of plaintiffs' attorneys in two ongoing cases and the plaintiffs in the *Kay* case strongly oppose the class action certification.

### Conclusion

In conclusion, the Court is of the opinion that this case should not be certified as a class action under Rule 23(b)(3), because the questions of law or fact that are common to the class as a whole do not predominate over individual questions and further because the class action device is not the superior method for adjudicating the claims presented herein.

The Court is of the opinion that the superior method for adjudication of this case is to continue allowing intervention freely for those who wish to join and to maintain firm control over this litigation by utilizing the tools set forth in the Manual for Complex and Multidistrict Litigation.

It is, therefore, ordered that the plaintiffs' Motion for Class Action Status be, and the same is hereby in all things denied, and that the class action allegations be stricken from the plaintiffs' complaints.