**In re UNR INDUSTRIES, INC., Unarco Industries, Inc., UNR, Inc., UNR-Rohn, Inc. (Alabama), UNR-Rohn, Inc. (Indiana), Dart, Inc., Jobal Tube Co., Inc., National Plastics, Inc., UNR Products, Inc., Leavitt Structural Tubing Co., and Folding Carrier Corporation, Debtors.**

Bankruptcy Nos. 82 B 9841–82 B 9851.

United States District Court,
N.D. Illinois, E.D.

March 25, 1983.

Gregory P. von Schaumburg, S.E.C. Regional Office, Chicago, Ill., for S.E.C.

Ira Kolb, Richard M. Bendix, Jr., Malcolm M. Gaynor, Schwartz, Cooper, Kolb & Gaynor, Chtd., Robert N. Grant, Thomas Linden, Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., for debtors.

Robert B. Chatz, Arvey, Hodes, Costello & Burman, Chicago, Ill., for Pittsburgh Corning.

David Brown, U.S. Trustee's Office, Chicago, Ill., U.S. trustee.

J. William Cuncannon, Defrees & Fiske, Chicago, Ill., Committee of asbestos-related plaintiffs.

James C. Murray, Jr., Katten, Muchin, Zavis, Pearl & Galler, Chicago, Ill., for GAF Corp.

Norman H. Nachman, Nachman, Munitz & Sweig, Ltd., Chicago, Ill., for unsecured creditors committee.

Mark E. MacDonald, Sidley & Austin, Chicago, Ill., for Owens Illinois Corp.

## MEMORANDUM OPINION AND ORDER

### WILLIAM T. HART, District Judge.

The Court has before it an Application ("Application") for the Appointment of a Legal Representative for Unknown Putative Asbestos-Related Claimants ("putative claimants") in the above-captioned cases.

For the reasons given below, the Application is denied.

### I. *Facts and Positions of the Parties*

On July 29, 1982, UNR Industries, Inc., and ten of its subsidiaries and affiliates ("the debtors") filed voluntary petitions for reorganizations under Chapter 11 of the Bankruptcy Code ("the Code"), 11 U.S.C. §§ 101 *et seq.* The cases have been consolidated for procedural purposes. The principal reason stated by the debtors for their filing the bankruptcy petitions is their involvement as defendants in some 17,000 asbestos-related personal injury lawsuits pending in various state and federal courts, exposing them to potential liabilities, high damages, and substantial costs of legal services.

The plaintiffs in the asbestos suits are individuals who allege that they contracted diseases as a result of exposure to asbestos manufactured or supplied by the debtors. The diseases associated with such exposure are asbestosis, mesothelioma, and broncho-genic carcinoma. Latency periods for these diseases range from fifteen to forty years, and in some cases might be even longer.

Pursuant to an order of the Bankruptcy Court, the United States Trustee appointed two creditors' committees:

(1) a committee of lenders and suppliers;

(2) a committee of the plaintiffs or their representatives in the pending asbestos cases brought against the debtors.

On October 12, 1982, the debtors filed with the Bankruptcy Court the instant Application, and the Bankruptcy Court set a briefing schedule on the matter. On December 16, 1982, a General Order was adopted by this Court pursuant to which all cases under Title 11 were referred to the bankruptcy judges of this district. The General Order became effective on December 25, 1982.

On December 30, 1982, on motion of an interested party, the Application was withdrawn from the reference of this case to the Bankruptcy Court for consideration and ruling (order of Bua, J., sitting as emergency judge). This Court denied the debtors' motion to vacate the withdrawal of the reference as to the Application on January 7, 1983.

All interested parties have expressed their views on whether this Application should be granted or denied. The range of views covers the spectrum: some parties favor the Application and ask that a legal representative be appointed immediately; others believe the question is premature, and decision on the Application should be delayed; others believe the Application should be denied immediately.[1] The Court will briefly outline the most significant positions asserted by the parties.

The Application requests the appointment of a legal representative to represent the interests of an unknown number of individuals who have in some way been exposed to asbestos (whether the exposure occurred within or without the workplace), who may in the future manifest an asbestos-related disease, and who may eventually claim money from the debtors for their injuries. The debtors contend that such a legal representative must be given the power to bind these putative claimants so that their claims can be discharged in these proceedings. Neither creditors' committee represents the interests of the putative claimants.

The debtors allege what will occur if the Court denies their Application: The 17,000 claims which already have been brought will be followed by between 30,000 and 120,000 more over the next forty years. No lenders will extend credit to companies burdened by litigation costs exceeding $1 million per month, with exposure to damages in the incalculable millions of dollars. If

---

1. One Peter John Robinson claims to be a person who comes within the debtors' definition of putative claimants in that he was exposed to asbestos fibers and has not contracted any disease, though he may well do so in the future. On January 28, 1983, Robinson filed a motion to intervene in these proceedings in order to oppose the appointment of a legal representative. Robinson's position has been made known to the Court, and previously his motion to intervene has been entered and continued.

the putative claims cannot be dealt with in a reorganization, the debtors will have no choice but to liquidate. Whatever hope the putative claimants have to a future recovery would vanish, because by the time their diseases are discovered there will be no company left with any assets to satisfy a judgment.

The debtors suggest that it is premature to contemplate the precise authority and duties of the legal representative. All that is necessary at this juncture, they say, is to appoint such a representative. The scope of the responsibilities will be fleshed out later on. They concede that the appointment of such a representative is a "novel concept" not expressly authorized by the Code, but state that this Court has the inherent equitable power to order the relief they seek so as to fulfill the Congressional intent of the Code: providing debtors with the opportunity for a "fresh start."

It is clear from the Application that the legal representative would be called upon to provide adequate representation of the interests of the putative claimants in at least these ways:

—devise a form of notice to them;

—aid in estimating or liquidating their claims;

—participate in the negotiation of a plan of reorganization which will protect their interests and satisfy their claims.

The United States Trustee has stated that the Application raises more questions than it answers. The Trustee urges that because the debtors have failed to answer threshold questions, the Court should not rule on the Application at this time.[2] Instead, the Court should immediately appoint an *amicus curiae* to study and to advise the Court as to the numerous legal problems posed by the Application.

First, the Court notes that the Trustee substantially duplicates the function of an *amicus curiae*—an advisor of the Court without the responsibility to represent a particular interest. Second, the Court has had the benefit of the briefs of many leading members of the bar representing all sides of the question and does not believe that it should impose additional expense on an estate already burdened with high administrative costs. Further, the Court finds that the questions raised by the Application are ripe for decision. Therefore the Court declines to appoint an *amicus curiae*.

The Application raises various statutory, practical, and constitutional problems. Despite the debtors' plea that these questions are premature and need not be addressed until after a legal representative is appointed, the Court finds that it would be a waste of judicial resources and the estate's financial resources as well were the Court not to address some of the obvious questions at this time.

## II. The Code

The debtors agree that the Code by its terms does not provide for the appointment of a legal representative.[3] Instead, they refer to a well respected text which they say shows that the Court has power to grant the relief they seek.

Where the Bankruptcy Code is silent, equitable principles will govern. But the

2. The Court notes that on December 13, 1982, pursuant to order of the Bankruptcy Court, the United States Trustee appointed an examiner in these cases to ascertain the need for a study of the debtors' potential liability in all of their pending and future asbestos litigation. Such a study will enable all of the parties to attempt to estimate the debtors' exposure, a prerequisite to the development of a plan of reorganization.

3. The United States Trustee has suggested, as a possible alternative for consideration, that the Court appoint a guardian ad litem rather than a "legal representative." The Court does not doubt its power to appoint a guardian ad litem to represent "an infant or incompetent", Fed.R.

Civ.P. 17(c), or even to represent unborn persons. *Hatch v. Riggs National Bank*, 361 F.2d 559, 565–66 (D.C.Cir.1966). However, as the debtors concede, "no person can serve as a guardian for another who is of full age and *sui juris*, since a court has neither the power nor duty to exercise a guardianship over an individual who is free and independent and is in full possession of his faculties. Furthermore, such an individual cannot make himself a ward of the court." Debtors' Reply Memorandum, at 6. Therefore the Court could not, within traditional equity doctrine, appoint a guardian ad litem to represent all unknown future claimants.

equitable powers of the bankruptcy court will be exercised with the limits laid down by Title 11, and subject to and consistent with specific provisions contained in it.

1 *Collier on Bankruptcy,* ¶ 3.01(5)(b)(ii) (15th ed. 1979). A bankruptcy court does not have unlimited equitable power to stray from the facts of any case and to enter any orders which might be described as equitable. The equitable power of this Court sitting in bankruptcy is limited by the statute adopted by Congress.

The debtors suggest that the putative claimants are creditors with claims which can be discharged in bankruptcy pursuant to 11 U.S.C. § 502. Two statutory definitions govern. A "creditor" is a person who "has a *claim* against the debtor that *arose at the time of or before the order for relief* concerning the debtor." 11 U.S.C. § 101(9) (emphasis added). A "claim" is a "*right to payment, whether or not such right is* reduced to judgment, liquidated, unliquidated, fixed, *contingent,* matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured ..." 11 U.S.C. § 101(4)(A) (emphasis added). The debtors contend that the putative claimants are holders of contingent claims. Three principles determine the question presented here:

■ 1. A claim of which a bankruptcy court may take cognizance must be one that is recognized by state or federal law. *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 170, 67 S.Ct. 237, 243–244, 91 L.Ed. 162 (1946) (Frankfurter, J., concurring). The asbestos claims and rights all arise under state law.

■ 2. The existence of a claim turns on when it arose. *Matter of Thomas,* 12 B.R. 432 (Bkrtcy.S.D.Iowa 1981). In the case of a claim sounding in tort, it is not the wrongful or negligent act which gives rise to the claim. Instead, no claim arises until the plaintiff suffers an injury. *United States v. Reid,* 251 F.2d 691, 694 (5th Cir. 1958). W. Prosser, *Law of Torts,* 143–44 (4th Ed.1971).

■ 3. The claim of an asbestos plaintiff (including a putative claimant) does not arise under state law until the plaintiff knows or should have known about the injury. *See, e.g., Fusco v. Johns-Manville Products Corp.,* 643 F.2d 1181 (5th Cir. 1981); *Karjala v. Johns-Manville Products Corp.,* 523 F.2d 155 (8th Cir.1975).

■ Therefore, under the definition imposed in the debtors' Application, the putative claimants—who have been exposed to asbestos some time in their lives but do not now have or do not know that they have an asbestos-related disease—have no claims under state law, and therefore do not have claims cognizable under the Code. Further, by the debtors' own definition the claims of the putative claimants will not have arisen either "at the time of or before the order for relief," 11 U.S.C. § 101(9), since a putative claimant is one who does not know that he has an asbestos-related disease.

The Code provision for the possibility of the evaluation and discharge of a *contingent* claim does not change the definition of "claim." It is not true that any conceivable claim is contingent. The contingency must be one that arises out of the prior *contractual* relationship of the claimant and the debtor. *Cf. In Re Gladding Corp.,* 20 B.R. 566, 568 (Bkrtcy.D.Mass.1982) ("a mere possibility of a [tort] claim of unknown origin, in an unknown amount, and which only might arise, if at all, at some unknown time" is not cognizable in bankruptcy); *Matter of Noonan,* 17 B.R. 793, 795 n. 3 (Bkrtcy.S.D.N.Y.1982) (contingent contract right to recoup advance against royalties is dischargeable in bankruptcy); *In Re Labonte,* 13 B.R. 887, 891 (Bkrtcy.D.Kan.1981) (guarantor of promissory note has contingent claim). A tort claim does not meet this requirement. Instead, a tort action brought against a debtor is covered by other definitions: it is a "right to payment ... [not yet] reduced to judgment ... [which is] unliquidated ... [and] disputed..." 11 U.S.C. § 101(4)(A).[4]

---

4. The legislative history of what became 11 U.S.C. § 101(9) states: "A guarantor of or

surety for a claim against the debtor will also

The debtors suggest the definition of "contingent claim" includes the future claims of the putative claimants. This position is untenable. If the debtors were correct, then any manufacturer of a potentially dangerous product would be able to file a petition under Title 11 followed by an application such as this, asking that a legal representative be appointed to protect the interests and negotiate a plan (including the discharge of all future claims) for those who some day might be injured by a product placed into the stream of commerce by the manufacturer—debtor. Bankruptcy courts would be forced to speculate as to the future dangerousness of and damages caused by any product which some day (after a discharge in bankruptcy) might be found to harm someone.

One court has found that a procedure which would *require* the filing of such a claim "would be absurd." *In Re Gladding Corp.*, 20 B.R. 566, 568 (Bkrtcy.D.Mass. 1982). A procedure which would *allow* for the filing and adjudication of such a claim would be equally improper as this Court has found no evidence that it was contemplated by Congress.[5]

Therefore the Code, which even under the debtors' view limits the equitable powers of the Court, does not provide for the presentation of the kinds of claims at issue here. Appointing a legal representative to assert claims which are not cognizable under the statute would be fruitless and a waste of the assets of the estate.

### III. Ability of Representative to Represent Putative Claimants

The debtors have rejected class action cases as precedent for any of the issues presented by their Application. The Court, however, believes it would be imprudent to consider this Application without considering the ramifications of such an order on this group of people. A class action is the legal construct which most closely resembles the issues presented here: under what circumstances can one person/representative speak for (and bind) large groups of individuals who are unable to speak for themselves?

Courts have been nearly uniformly reluctant to certify classes in mass tort actions. Common questions do not predominate in cases involving known injuries which allegedly were caused by the same defective product. *See, e.g., Yandle v. PPG Industries, Inc.*, 65 F.R.D. 566 (E.D.Tex.1974) (court refuses to certify, solely for determining questions of liability, class of 570 potential asbestos plaintiffs).

The court in *Yandle* noted some of the predictably conflicting legal and factual issues posed if a class were to be certified in the asbestos cases. The plaintiffs pressed a variety of legal theories, including negligence, failure to warn of the danger, failure

---

be a creditor, because he holds a *contingent claim* against the debtor that becomes fixed when he pays the creditor whose claims he has guaranteed or insured." Notes of Committee on Judiciary, S.Rep. No. 989, 1978 U.S.Code Cong. & Ad.News 5787, 5808 (emphasis added). *See also* Notes of Committee on the Judiciary, H.R. No. 595, 1978 U.S.Code Cong. & Ad.News 5963, 6267. This seems strong evidence that the term "contingent" was intended to apply to situations arising from prior contractual relationships.

The legislative history does say that "the bill contemplates that all *legal obligations* of the debtor, *no matter how remote or contingent,* will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court." S.Rep. No. 989, *supra,* at 5808; H.R. No. 595, *supra,* at 6266 (emphasis added). This does not change the fact that in order to be dealt with in bankruptcy, a *legal obligation* must exist. As demonstrated in the

text, *supra,* the debtors have legal obligations only to those who know or should know that they have suffered injuries. By the debtors' definition, this excludes the putative claimants.

In sum, the legislative history does not support the contention that the term "contingent" is intended to encompass a common law tort action which might arise in the future (but after a discharge in bankruptcy) at the time a person suffers actual injuries.

5. If one of these putative claimants—for example, the proposed intervenor in this action—were to file a proof of claim in this Court, such claim would be summarily disallowed and dismissed. Such a putative claimant has no "right to payment." The fact that a so-called legal representative would instead appear to argue by proxy the putative claimant's cause does not create a claim where one did not before exist.

to correct plant deficiencies, and liability for exemplary damages under state workers' compensation laws. The defendants interposed numerous defenses: plaintiffs' different periods of exposure to asbestos fibers; different medical history of each plaintiff; whether a plaintiff was aware of the dangers of asbestos dust; whether a plaintiff had been given a mask or respirator, and whether such a safety mechanism was used. The case at bar adds additional complex and potentially conflicting issues: the different laws of the fifty states would govern the claims of the various putative claimants.

The Judicial Panel on Multidistrict Litigation addressed the very narrow issue of whether the asbestos cases litigated in various federal courts contained sufficient common questions to justify their transfer to one judicial district for the limited purpose of coordinating pretrial proceedings. The Panel found that it should not be done. *In Re Asbestos & Asbestos Insulation Material,* 431 F.Supp. 906 (Jud.Pan.Mult.Lit.1977) (*per curiam*).

It seems clear that if the asbestos cases brought by people who are at present suffering from diseases cannot be consolidated for purposes of pretrial proceedings—a proposition far less complicated than appointing a class representative to appear for and bind those who are suffering from the disease—doing both for people who do not yet know they have any disease and may not experience any health problem for the next forty years would be a grave mistake. No individual could represent such a large group with conflicting positions on such various and complex issues, particularly where such a representative would by definition be unable even to ask his/her constitutents what it is they want.

It would be impossible for one legal representative to represent adequately the claims of tens of thousands of future claimants.

## IV. *Notice*

The practical and legal problems of notifying those who the legal representative would be able to bind, were the Application granted, are insurmountable. All parties agree that a person may contract an asbestos-related disease in many ways. People who worked directly in installing asbestos insulation in, for example, Navy shipyards have contracted such diseases. Members of such workers' families who breathed asbestos fibers buried in the workers' clothing worn at home have been stricken. School children who were exposed to pipes and walls insulated by asbestos products may have contracted the disease. It is theoretically possible that someone who once walked by a shipyard where asbestos insulation was being installed may have inhaled asbestos fibers. All such people are included in the group of putative claimants, since asbestos-related diseases one day may become manifest in them.

In a case which seems to bear the closest resemblance to the problems at issue here—though the resemblance is not actually close, since the problems there were far more manageable—*personal* notice was required for injured persons to be bound by a judgment. *See Payton v. Abbott-Labs,* 83 F.R.D. 382 (D.Mass.1979) (women who may manifest injuries in the future causally related to their mothers' having taken DES while the women were *in utero* must receive personal notice in order for judgment in class action to bind them; class membership confined to women born and domiciled in Massachusetts, who had been exposed in Massachusetts).

Last Term the Supreme Court decided that it would violate the due process clause of the Fourteenth Amendment for a tenant to be evicted from his or her apartment for non-payment of rent where the state statute required a notice of eviction to be posted to the apartment door. *Greene v. Lindsey,* 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982). If tacking an eviction notice on the door of the tenant's apartment does not provide sufficient notice to comport with due process, it is inconceivable that any notice short of personal notice to every person whom the debtors would seek to bind—and this could include, theoretically, every person in this country—would be acceptable under the principles of due process.

(

The debtors have not suggested what form of notice could possibly be devised to inform those whom the debtors hope to bind (though they make mention of "notice by publication or other means..." Debtors' Memorandum in Support, at 18). Their answer is that it is a premature issue: first appoint a legal representative, and then all the parties before the Court can work out the details of notice. But this Court, asked to employ its equitable powers, will not appoint a legal representative to invent a kind of notice when no conceivable form of notice has been suggested or can be imagined which will inform such future claimants.

Further, a plan of reorganization which would "bind" the putative claimants would be subject to constant attack over the years on due process grounds, as asbestos-related diseases manifest themselves in the "putative claimants" who never had the opportunity personally to participate in the proceedings or to "opt out" entirely. Such a result would increase expenses to the estate, make creditors feel insecure, and not accomplish the results sought.

V. *Conclusion*

Within the latitude given to it by statute, the Constitution, and the common law, a court may be creative in modifying and adjusting old remedies to suit new problems. But a court cannot rewrite or add to the applicable binding statute. The debtors would have the Court do that here. They argue, in effect, that the Congressional intention to provide the possibility of a "fresh start" to entities suffering under grave financial disabilities includes the intention to subordinate to the "fresh start" concern the statutory and constitutional rights of those who do not yet know that they will in the future suffer from a dread disease. A "fresh start" for these debtors is not as important as this.

The Court is not unaware that in refusing to approve of a procedure by which the rights of the putative claimants would be adjudicated and cut off, the putative claimants may wind up with judgments against corporations left with only one asset: a corporate charter.

However, this is a Court of limited power. Congress has not given the judiciary authority to adjudicate the claims of future unknown claimants. The statute under which the Court labors does not contemplate the resolution of all problems faced by entities with substantial financial exposure, and does not provide for such a resolution here.

The Court is aware that there are proposals before Congress to create solutions for these problems, both for the companies and the present and future claimants. That is the place a solution must be found. There simply is no authority in the statute or the Constitution for this Court to grant the debtors the relief they seek.

THEREFORE IT IS ORDERED that

(1) The debtors' Application is denied.

(2) The motion of Peter John Robinson for leave to intervene is denied.