**Patsy CARUSO, on behalf of himself and others similarly situated, Plaintiffs,**

v.

**CELSIUS INSULATION RESOURCES, INC., Defendant.**

**Civ. A. No. 83–1149.**

United States District Court, M.D. Pennsylvania.

April 17, 1984.

Lee C. Swartz, Hepford, Swartz, Menaker & Morgan, Harrisburg, Pa., Arnold Levin, Philadelphia, Pa., for plaintiffs.

Deasey, Scanlan & Bender, John F. Kent, Philadelphia, Pa., for defendant.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction*

Before the court is plaintiff Patsy Caruso's motion for class certification pursuant to Federal Rule of Civil Procedure 23. For the reasons given in the following discussion, the motion is denied.

### II. *Background*

The facts, as alleged and presented by the parties, evince the following scenario. Defendant Celsius Insulation Resources, Inc., ("Celsius"), manufactured urea formaldehyde foam insulation ("UFFI"), a product ultimately purchased by plaintiff. UFFI was also purchased, used by, or in some way affected members of the class plaintiff seeks to represent. The product was distributed by Celsius to installation companies which would spray, pump or blow the UFFI into the walls of structures to be treated. After installation, the UFFI purportedly "off-gases", releasing toxic formaldehyde gas into a building for periods that may range from weeks to years. Breathing this formaldehyde gas is alleged to lead to various detrimental effects on the health even of individuals without specific pre-existing allergies. These health hazards, plaintiffs contend, lower the market value of structures with UFFI.

Problems resulting from UFFI have also purportedly led to some individuals undergoing medical examinations and vacating their homes. Furthermore, some potential plaintiffs have allegedly incurred the expense of having formaldehyde gas levels measured, and of having the UFFI removed, a process that may require tearing out exterior and interior walls.

Plaintiff Patsy Caruso purchased defendant's UFFI for his home in September of 1977. In August of 1983, Caruso, on behalf of himself and others similarly situated, filed a complaint, which alleged negligence, strict liability, breach of warranty and intentional tort (requesting punitive damages) as its four legal premises for relief. Plaintiff's complaint alleges that he has sustained economic losses, property damage, and personal injuries and that he runs an increased risk of future adverse effects on his health. Such health effects include eye, nose, throat and skin irritation, coughing, nausea, headaches and cancer.

Plaintiff seeks class certification and relief for costs of removal of the UFFI, costs of medical and environmental detection programs in connection with the latent injuries, punitive damages and a determination of common liability for the personal injury claims. Plaintiff seeks certification of four classes, described as the "economic harm class" (Class I), the "personal injury class" (Class II), the "latent injury class" (Class III), and the "punitive damages class" (Class IV). Class I would encompass all individuals who live or work in or about or own property containing UFFI manufactured by defendant and who have suffered economic harm or property damage, including the cost of removal or replacement of the UFFI, and the diminution of property values. Class II would include all individuals who live or work in structures affected by defendant's UFFI, and who have suffered presently cognizable claims for personal injury damages, psychological harms, emotional distress, and disruption of their lives. Class III would be composed of all individuals who live or work in structures affected by defendant's UFFI and have suffered or may suffer latent injuries. The relief sought is medical detection and environmental monitoring. Class IV would overlap the other classes in that it would consist of all those in the preceding classes who have suffered harm as a result of

defendant's UFFI, and who seek punitive damages.

### III. *Prerequisites to Maintaining a Class Action: Rule 23(a)*

■ The party moving for class certification has the burden of establishing that the proposed class meets the requirements of Rule 23. *Manning v. Princeton Consumer Discount Company, Inc.,* 533 F.2d 102 (3d Cir.), cert. denied, 429 U.S. 865, 97 S.Ct. 173, 50 L.Ed.2d 144, *reh. denied,* 429 U.S. 933, 97 S.Ct. 342, 50 L.Ed.2d 303 (1976). To maintain this case as a class action, Caruso must satisfy Fed.R.Civ.P. 23(a), which sets forth the following prerequisites to a class action:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Caruso must also demonstrate he has met two implicit requirements not mentioned in the rule, that an identifiable class exists, and that the class representatives are members of the class. *See In re Agent Orange Products Liability Litigation,* 506 F.Supp. 762, 788 (E.D.N.Y.1980); 7 C. Wright and A. Miller, *Federal Practice and Procedure* §§ 1760–61. These requirements are not troublesome in the present case because Caruso's purchase and use of UFFI evidence his membership within the broad class he seeks to represent and certainly UFFI users and/or those exposed to UFFI are an identifiable class.

■ In showing that Rule 23(a) is satisfied, the plaintiff must meet each of the four listed requirements. To satisfy the requirements of Rule 23(a)(1), Caruso must demonstrate that "the class is so numerous that joinder of all members is impracticable." Plaintiff alleges that the proposed classes involve hundreds or thousands of Pennsylvanians affected by defendant's product. Defendant argues that plaintiff's estimates are merely conclusory. At this stage in the proceedings no greater specificity is required to establish numerosity. *Hedges Enterprises, Inc. v. Continental Group,* 81 F.R.D. 461, 464–65 (E.D.Pa. 1979); *In Re Plywood Antitrust Litigation,* 76 F.R.D. 570, 578 (E.D.La.1976). Further, courts have not specified numerical limits in allowing certification for a wide range of potential class sizes, and have certified classes with as few as twenty-five members. 7 C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure,* § 1762. We are satisfied that the precise number of purchases of defendant's product could be rapidly discernible through limited discovery and, therefore, the numerosity requirement of Rule 23(a) has been satisfied.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." According to 7 Wright, Miller and Kane, *Federal Practice and Procedure, supra,* § 1763, "Rule 23(a)(2) does not establish any quantitative or qualitative test of commonality ... [only] ... that more than one issue of law or fact must be common to members of the class." Some cases have allowed certification without explanation, and courts generally "have given it [this requirement] a permissive application so that common questions have been found to exist in a wide range of contexts." *Id.*

■ A careful review of the numerous cases cited to us by both parties indicates wide discretion available to the court in finding commonality. The requirement has been met in cases where factual differences exist, *see, e.g., Like v. Carter,* 448 F.2d 798 (8th Cir.1971), *cert. denied,* 405 U.S. 1045, 92 S.Ct. 1309, 31 L.Ed.2d 588 (1972), and in cases of unique factual situations. *See, e.g., Sweet v. General Tire & Rubber Co.,* 74 F.R.D. 333 (N.D.Ohio 1976); *Senter v. General Motors Corp.,* 532 F.2d 511 (6th Cir.1976). We are particularly cognizant of the "common nucleus of operative facts" test enunciated in *United Mine*

*Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and in *Coburn v. 4-R Corp.,* 77 F.R.D. 43 (E.D.Ky.1977), *aff'd, Union Light Heat & Power Co. v. United States District Court,* 588 F.2d 543 (1978), in which a single common question satisfied the commonality requirement. Further, we are aware of our duty to refrain from any inquiry into the viability of class claims. *Samuel v. University of Pittsburgh,* 56 F.R.D. 435 (W.D.Pa.1972). At this juncture, therefore, it appears to us that at least some questions are common to all plaintiffs, particularly those concerning the nature of UFFI, the product in issue. Therefore, we conclude that Rule 23(a)(2) has been satisfied.

■ Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." 3b J. Moore and J. Kennedy, *Moore's Federal Practice* ¶ 23.06–2, suggests the duplication of this provision by other provisions of Rule 23, particularly Rules 23(a)(2) and 23(a)(4), and that its main purpose is to protect absent class members. Applicable cases have held that identity between the representative and the class claims is not required. *See, e.g., Ouellette v. International Paper Co.,* 86 F.R.D. 476, 480 (D.Vt.1980). Moreover, a liberal construction may be applied to find typicality as long as no express conflict between the representative party and the class exists, *see, e.g., Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 449 (3rd Cir.1977), and the focus of the court's inquiry should be to establish the defendant's wrongful conduct, not to prove facts peculiar to the plaintiffs, *see, e.g., Sweet v. General Tire & Rubber Co., supra,* 74 F.R.D. at 335. Under these standards, we find that each of the classes urged by plaintiff appears to satisfy the typicality requirement. Caruso has alleged that he had the defendant's UFFI installed in his house and that as a result he sustained personal injuries, an increased risk of future adverse health effects, economic losses, and property damage.

■ The final prerequisite of subdivision (a), Rule 23(a)(4), requires that plaintiff "fairly and adequately protect the interests of the class." The requirement is generally divided into a consideration of the adequacy of the representative and the adequacy of counsel. Factors that are considered in determining adequacy of the representative include showing an "interest co-extensive with the interests of other members of the class," showing that the representative's interest is not "antagonistic" to other class members, and comparing the proportion of those made parties with total class membership. 3b *Moore's Federal Practice* ¶ 23.07[1]. The same source also questions the extent to which this requirement differs from the other requirements of Rule 23. *Id.* at ¶ 23.06[1]. In view of Caruso's position as a homeowner with defendant's UFFI installed in his home, his interest would certainly not be antagonistic to other members of the class, even if it would not be identical. *See Bogosian v. Gulf Oil Corp., supra,* 561 F.2d at 449. Defendant has not challenged the competence and experience of plaintiff's counsel in class action litigation. Moreover, plaintiff's memorandum in support of class certification includes numerous exhibits detailing the education, expertise, and other qualifications of counsel. Accordingly, we conclude that the requirements of subdivision (a)(4) of Rule 23 are met.

## IV. *Rule 23(b) Requirements*

Once a court finds that the threshold criteria discussed previously have been satisfied, a further determination pursuant to Rule 23(b) must be made before certification can occur. In the present matter Caruso, as representative plaintiff, must show that the action is properly maintainable under one of the three subdivisions of Rule 23(b). *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 163, 94 S.Ct. 2140, 2145, 40 L.Ed.2d 732, 740 (1974). Because plaintiff has urged certification under Rule 23(b)(3),

we do not address or consider subdivisions (b)(1) and (b)(2).[1]

Under Rule 23(b)(3), a matter cannot proceed as a class action unless "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, *and* that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." (emphasis supplied) This section of the Rule further provides,

> The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

■ In reaching our conclusions on Rule 23(b)(3) requirements, we have been guided by these four considerations and have determined that common questions do not predominate over individual ones. Plaintiff argues, for example, that individually determined damages need not defeat class certification where a common course of conduct has been alleged. It is precisely this common course of conduct that we find lacking throughout the complaint and in the memoranda filed by plaintiff. Plaintiff further maintains that claims for damages for manifest personal injuries need not be certified, and refers to mass tort and products liability cases that have been certified. However, one commentator has noted in this regard that certification would be inappropriate in accident cases because class actions are not the superior method of resolution where individual liability questions and defenses "overwhelm the common questions." Kaplan, *Continuing Work of*

*the Civil Committee: 1966 Amendment of the Federal Rules of Civil Procedure(I)*, 81 *Harv.L.Rev.* 356, 393 (1967).

Examples of individual questions that we find are not readily susceptible of common treatment are varying property damages, varying levels of formaldehyde, nature of representations made, nature of exposure, time the injury was discovered, and the existence of superseding and intervening causes. Even if determinations were made of the common questions alleged by plaintiff, such as the levels of formaldehyde and amounts of UFFI that present a risk of harm and the effect of mixing different types of insulation, the results would have to be individually applied to each plaintiff.

Addressing an arguably less diffuse factual background, the court denied certification in *Yandle v. P.P.G. Industries, Inc.*, 65 F.R.D. 566 (E.D.Tex.1974), a case in which injuries were claimed by reason of exposure to asbestos. Some of the individual issues involving asbestos exposure by workers over a ten year period were the different periods of employment and varying concentrations of asbestos dust during time employed. The lack of a single set of operative facts that established liability persuaded the court that "there is not a single act of negligence or proximate cause which would apply to each potential class member and each defendant in this case." *Id.* at 571. Similarly, in the present matter, we find that a single set of operative facts cannot be found.

We have also studied the case of *In re Northern District of Cal., Dalkon Shield, etc.*, 693 F.2d 847 (9th Cir.1982), *cert. denied*, 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983), and of the two reasons given by the court for its refusal to find commonality in a nationwide class of plaintiffs claiming punitive damages from the

---

**1.** In their complaint, plaintiff also seeks certification for Class I under Rule 23(b)(1); Class II under Rule 23(b)(1) and (b)(2); Class III under Rule 23(b)(1) and (c)(4)(A); and Class IV under Rules 23(b)(1) and (b)(2). No arguments have been presented by plaintiff as to the applicability of Rules 23(b)(1) and (b)(2), and the applicability of Rule 23(c)(4)(A) was argued only in plaintiff's reply memorandum.

use of an intrauterine device, we find the second persuasive here:[2]

> What ... [defendants] ... knew about the Dalkon Shield, when they knew it, what information they withheld from the public, and what they stated in their advertising to doctors and in their product instructions during various time periods may all be common questions. These questions are not entirely common, however, to all plaintiffs.

*Id.* at 850. The court applied a similar rationale in refusing to find commonality in the statewide class of plaintiffs. *Id.* at 854.[3]

We find that the way in which the classes are structured in relation to the factual background of this suit obscures any common questions of fact and law in a manner analogous to *Dalkon Shield, supra.* Even if plaintiff has offered a number of plausibly common questions, a major difficulty is in their application to the four named classes. Class I, the "economic harm class" includes several types of residents as well as individuals who merely work in or about property containing defendant's UFFI. Class II, the "personal injury class," Class III, the "latent injury class," and Class IV, the "punitive damage class" all encompass the same overly broad groups of affected individuals. Further, the duty of care to owners, renters, workers, and other individuals merely transacting business in and around structures containing defendant's UFFI may differ so significantly as to make it impossible to find any common question of negligence, the theory of recovery in plaintiff's first cause of action. The intervention of third-party installers who mixed the products, third-party middlemen and suppliers, and the possible interaction of defendant's product with other materials that also contain formaldehyde and are already inside structures obscures the "common nucleus

of operative facts" and clouds any finding on a class basis of strict liability, the basis of plaintiff's second cause of action.

Causation, necessary for a finding of negligence, as well as for strict liability, is equally clouded, as is the possibility of discerning a measure or formula for compensatory and economic harm. Reliance by individual purchasers on written and oral warranties, as well as whether notice was given to breaching parties, and if so, the kind of notice, also present individual questions of law and fact rather than a common question of breach of warranty, plaintiff's third theory of recovery. Finally, the question of the manufacturer's prior knowledge of any detrimental effects of UFFI, which knowledge goes to the claim for punitive damages, is also an issue not common to all class members. Although each of these issues may be capable of resolution in the context of individual lawsuits, attempted resolution through a class action presents impenetrable barriers, particularly to the efficacious management of such an action.

We have also studied five UFFI cases, decided in state and federal district courts, in which class certification was uniformly denied. Material to each of the decisions was the court's perception of the individualized nature of the claims, which were uniformly found to predominate over any common issues of law and fact. The companion cases of *Delaney v. Borden, Inc.,* No. 82–1853 (E.D.Pa. Filed Aug. 3, 1983), and *Sanders v. Tailored Chemical Corp.,* 570 F.Supp. 1543 (E.D.Pa., 1983), for example, wherein certification was denied for a class confined to individual purchasers of UFFI, persuades us that Caruso's far more inclusive classes are even less susceptible of class treatment. *See also O'Connor v. Borden, Inc.,* No. 80–4201 (S.D.S.D., filed Sept. 30, 1982), *interlocutory appeal denied,* Misc. No. 82–8126 (8th Cir., filed Oct.

---

**2.** The first rationale concerned the impossibility of applying a single products liability standard to a nationwide class of plaintiffs claiming punitive damages, a situation that is inapposite to the instant case, where the products liability law of a single state applies. *See Erie Railroad Co.*

*v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**3.** The court did note, however, that the commonality requirement of Rule 23(a)(2) was not in itself insurmountable, but alluded to concomitant problems of management.

29, 1982); *Antoncich v. Borden, Inc.* No. 81–2–00727–9 (Wash.Super. Ct., King Cty., filed Feb. 23, 1982); and *Kegley, et al. v. Borden, et al.,* No. 82–2–03317–5 (Wash. Super.Ct., Spokane Cty., filed Sept. 27, 1983). The following reasoning of the court in *Dalkon Shield, supra,* is especially pertinent:

> In the typical mass tort situation, such as an airplane crash ·or a cruise ship food poisoning, proximate cause can be determined on a class-wide basis because the cause of common disaster is the same for each of the plaintiffs.

> In products liability actions, however, individual issues may outnumber common issues. No single happening or accident occurs to cause similar types of physical harm or property damage. No one set of operative facts establishes liability. No single proximate cause applies equally to each potential class member and each defendant.

693 F.2d at 852.

Another prong of the Rule 23(b)(3) analysis, whether class treatment is the superior method of handling the litigation, also presents a problem for this court. We do not see how the collective presentation of liability evidence will advance the parties' interests nor how judicial economy of administration would result from certification. *See duPont Glore Forgan v. A.T. & T.,* 69 F.R.D. 481, 489 (S.D.N.Y.1975). The problem is that the missing link, causation, will have to be proved in the case of each plaintiff before other individual issues such as damages can be reached.

■ We first consider "the interest of individual members of the class in individually controlling the prosecution or defense of separate actions." Rule 23(b)(3)(A). Generally, personal injury claims are inappropriate for class actions because "each person should have the right to prosecute his own claim and be represented by the lawyer of his choice." *Yandle, supra,* 65 F.R.D. at 569. Further, the rationale for the decisions on the certification issue in the UFFI cases cited previously turned largely on the individualized nature of the claims. *See, e.g., Antoncich, supra,* in which the court noted, "There are individual questions with respect to ... the level of formaldehyde ... degree of injury, causation and damage ... the source ... [and cause of] ... the alleged illness ... installation ... misrepresentation with respect to reliance and ... notice ...." *Id.,* oral op. at 7. *Accord, Delaney; Sanders; O'Connor; Kegley, supra.*

Additionally, in granting certification, the interest of persons who neglect to opt out of the case must be considered, particularly with regard to the "latent injury class." *Yandle, supra,* at 572. Because of the nature of the injuries involved, the court there believed that the interests of absentee plaintiffs would not be protected in a proposed class of asbestos workers at a single plant. We foresee the possibility of the same situation occurring here, because uncounseled plaintiffs who do not "opt out" without understanding the import of their action would be bound by a decision rendered in this litigation.

Secondly, we consider other pending litigation. We have noted that only two individual UFFI suits have been filed at the time this action was brought. We will not speculate as to the reasons for these few filings. We follow *Dalkon Shield, supra,* in believing that the prosecution of these separate actions by individual plaintiffs offers the advantage of producing, through a few test trials, "more settlements than ... a lengthy and complicated trial of consolidated cases." 693 F.2d at 854.

As our third consideration, we do not see the desirability of concentrating the litigation in this district, especially in view of our reservations concerning potential plaintiffs outside the district. We note that defendant Celsius Insulation Resources, Inc. is not located nor does it maintain offices in the Middle District of Pennsylvania. Additionally, the alleged injury has also occurred in districts other than our own. We are persuaded that the factual questions of this action contrast with the so-called "single source" tort cases in which the litigation proceeded either in the

forum where the site of the injury occurred or under multi-district litigation procedures. *See, e.g., In re Agent Orange Product Liability Litigation, supra,* which was already underway under MDL 381 prior to the decision to grant conditional class certification.

## V. *Rule 23(c)(4)(A)*

█ Plaintiff has also alleged numerous common issues and subclasses and has urged us to re-evaluate the claims in terms of these common issues under Rule 23(c)(4)(A) should we decline to certify the entire matter. This subdivision of the Rule provides that "[w]hen appropriate ... an action may be brought or maintained as a class action with respect to particular issues."

Plaintiff cites no cases supporting his argument in the UFFI context, and we note that in none of the UFFI cases we have discussed has a court taken the course plaintiff now suggests. None found liability to be a common issue or certified any common issue or subclass under Rule 23(c)(4). Many of plaintiff's allegedly common issues go to the issue of strict liability, which requires plaintiff to prove causation, as well as damages. Even if the harmful nature of defendant's product were shown, a multitude of separate trials would be required. Owing to the intervention of different installation companies, each responsible for final mixing of the product, we are not persuaded that this litigation involves one readily identifiable product. If it does not, as we believe, then the litigation of any single issue would accomplish nothing of value for any of the classes alleged by plaintiff.

In addition, any "common issue class" certified under Rule 23(c)(4)(A) must still comply with the other applicable subdivisions of Rule 23. 7A Wright and Miller, *Federal Practice and Procedure,* § 1790. Wright and Miller further caution against the use of the Rule when the court finds, as we do here, that the "noncommon issues are inextricably entangled with the common issues, or that the noncommon issues are too unwieldly or predominant to be handled adequately on a class action basis...." *Id.* Because of the nature of the formaldehyde litigation, we cannot easily separate a common issue from the complex factual situation.

Plaintiff has pointed out that constituent elements of his claims have been certified in other types of class actions, some in similar contexts, and plaintiff has cited cases involving antitrust, securities and consumer law, as well as civil rights, environmental health, and product liability litigation. Nevertheless, we see no evidence of the "general trend" in favor of certifying classes in the areas of environmental health harms. In light of the recent lower court decisions directly on point, we see exactly the opposite trend. Moreover, we disagree with plaintiff that the claims for economic harm, i.e., the cost of removing the insulation from homes and businesses, somehow distinguish the instant action from other product liability cases.

Plaintiff vigorously urges us to reject the "talismanic label of 'mass tort' " in our consideration of the certification motion. Plaintiff gives four reasons that allegedly differentiate the instant claims from other cases in which certification has been denied: (1) claims for damages for personal injuries need not be certified; (2) claims for medical detection and environmental monitoring have been accepted as a uniform class claim; (3) the economic harm claims are susceptible to a determination by formula; and (4) the determination of liability and causation are well suited for class treatment because of the ample public record on these issues. None of these reasons persuades us that plaintiff's classes nor any subdivision thereof present the necessary substantial factual basis common to the various individual claims. On the contrary, we are persuaded that the events prior to the occurrence of the tort, nature of the wrong, identity of the responsible parties, standard of care owed to class members, legal liability, a compensatory damage formula, and the award of punitive

damages are individual, rather than common, questions.

### VI. *Conclusion*

Based on the foregoing discussion we deny plaintiff's motion and will enter an order denying certification of the within matter as a class action.