In re **FAIRCHILD AIRCRAFT CORPORATION, Debtor.**

**FAIRCHILD AIRCRAFT INCORPORATED,**
Plaintiff

v.

Barbara M. **CAMPBELL, individually and as Administratrix of the Estate of Charles E. Campbell, Deceased, Yvonne C. Brooks, Individually and as Administratrix of the Estate of Markvan B. Brooks, Deceased, and R.H. Brooks, Individually, Insurance Company of North America, Eastern Foods, Inc., Hooters of America, Inc., Joan W. Duncan, Individually and as Personal Representative of the Estate of G. Dan Duncan, Defendants.**

Bankruptcy No. 90–50257.
Adversary No. 94–5113.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

May 13, 1998.

James A. Hoffman, Clemens & Spencer, San Antonio, TX, Donald R. Anderson, Dennis M. Hill, Phillip G. Pampillo, Drew Eckel & Farnham, Atlan, GA, for Ins. Co. of North America, Eastern Foods, Inc., and Hoot of America, Inc.

John A. Hagins, Covington, Patrick, Hagins & Lewis, Greenville, SC, for Joan W. Duncan.

Andrew M. Scherffius, Atlanta, GA, for Barbara M. Cambell.

David William Boone, Atlanta, GA, for Yvonne C. Brooks.

Deborah D. Williamson, Cox & Smith, Inc., San Antonio, TX, Mark T. MacNam, Thomas D. Dundon, Neal, & Harwell, Nashville, TN, Geoffrey C. Hazard, Jr., Elizabeth Warren, University of Pennsylvania, Philadelphia, PA, for Fairchild Aircraft Corp.

## ORDER VACATING PRIOR DECISION

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing a Motion by Fairchild Aircraft Incorporated to Vacate Bankruptcy Court Judgment in the above-styled case. Fairchild originally filed its Motion with the U.S. District Court for the Western District of Texas ("District Court"), where the underlying judgment was pending on appeal. Fairchild sought to both dismiss the appeal and to have that court vacate this court's judgment. The District Court dismissed the appeal, but remanded the motion to vacate to this court, citing *Bonner Mall.* The district court observed in its decision to remand that the Supreme Court recommended that the proper procedure for appellate courts to pursue when presented with a request for *vacatur* is, in the usual instance, remand to the court that issued the decision in question. *See U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). The judiciary has an independent interest in preserving precedents and both the bench and the bar have an interest in certainty and settlement in reported case law and in the orderly unfolding of a prescribed appellate process.[1] Neither the courts nor third-party litigants benefit from a jurisprudence that is contingent on the vagaries of the settlement negoti-

ations of other parties. The court issuing an opinion has a "vested interest" in determining whether to vacate that opinion. While *vacatur* by the district court (sitting as an appellate court with respect to this court's judgment) would be possible, it would not be favored, justifying remand.[2]

### PROCEDURAL BACKGROUND

Because the unusual procedural situation of this case has a direct bearing on our analysis, it is important that we briefly summarize its history. This matter has its roots in a prior declaratory judgment action brought in this court to construe and enforce its order confirming a chapter 11 plan of reorganization. In February 1990, Fairchild Aircraft Corporation ("FAC") sought relief under chapter 11 of the U.S. Bankruptcy Code. Shortly thereafter, a chapter 11 trustee was appointed (the "Trustee"), who determined that an effective reorganization of FAC was not feasible and proposed instead a sale of the assets of the estate as a going concern. The assets were then sold, as part of the Trustee's First Amended Plan of Reorganization (the "Plan"), to Fairchild Aircraft Incorporated, with this court confirming the Plan on September 17, 1990. The asset purchase agreement contained a clause limiting FAI's assumption of liability from FAC and the Trustee, and the plan contained certain injunction language to enforce the agreement.

Unfortunately, on April 1, 1993 an airplane manufactured by FAC (not FAI) crashed in Tennessee, killing four persons. In the ensuing product liability litigation (eventually brought in federal district court in Tennessee), FAI was named as a defendant, on a theory of successor liability. Fairchild then

---

1. As Justice Scalia noted in *Bonner Mall,* "Congress has prescribed a primary route, by appeal as of right and certiorari, through which parties may seek relief from the legal consequences of judicial judgments. To allow a party who steps off the statutory path to employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment would—quite apart from any considerations of fairness to the parties— disturb the orderly operation of the federal judicial system." *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. at 27, 115 S.Ct. at 392.

2. In its order remanding Fairchild's motion for *vacatur,* the District Court noted *Bonner Mall 's* observation that "even in the absence of, or before considering the existence of, extraordinary circumstances, a court of appeals presented with a request for vacatur of a [trial court's] judgment may remand the case with instructions that the [trial court] consider the request, which it may do pursuant to Federal Rule of Civil Procedure 60(b)." *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* 513 U.S. at 29, 115 S.Ct. at 393.

brought a separate action in this court seeking a declaratory judgment to the effect that the claims arising from the crash were barred by the September 17, 1990 confirmation order and the discharge injunction provided by 11 U.S.C. § 524. This court denied Fairchild the declaratory relief it sought, in an extensive, published decision which closely examined the difficult issue of "future claims" in bankruptcy. *See Fairchild Aircraft Inc. v. Campbell (In re Fairchild Aircraft Corporation)*, 184 B.R. 910 (Bankr.W.D.Tex.1995).

FAI promptly appealed this decision to the District Court. However, while the appeal was pending, the underlying litigation in Tennessee proceeded to trial.[3] After much hard fighting, Fairchild Aircraft Incorporated won. The Tennessee plaintiffs appealed to the United States Court of Appeals for the Sixth Circuit, which in turn ordered the parties to mediation. This mediation in turn led to a settlement between the plaintiffs and FAI (the "Settlement"). The Settlement mooted not only the appeal pending in the Sixth Circuit, but also the appeal pending in the Western District of Texas. After all, the point of the declaratory judgment action had been to *prevent* the Tennessee litigation from proceeding. With that litigation now resolved, any appellate decision on the merits of that declaratory judgment would be, according to FAI, merely advisory.[4] Concerned that this court's decision could have an adverse impact on FAI in any future successor liability litigation, and equally concerned that it would not be able to sustain an appeal of this court's decision once the underlying litigation in Tennessee had been settled, FAI filed a motion to dismiss the appeal, but to vacate the underlying judgment.

---

3. This court's denial of FAI's request meant that the Tennessee litigation could only be arrested with an appellate decision favorable to FAI by the U.S. District Court in San Antonio. Such a decision was not forthcoming in time to prevent FAI from going to trial in Tennessee.

4. We discuss this issue in greater detail *infra*.

5. Of course, FAI took precisely the opposite position when the matter was first argued in this court, and this court agreed with FAI that it did in fact have subject matter jurisdiction. Normal-

*ANALYSIS*

I. SHOULD THE *FAIRCHILD* DECISION BE VACATED ON GROUNDS THAT THIS COURT NEVER HAD SUBJECT MATTER JURISDICTION TO ISSUE THE DECISION IN THE FIRST PLACE?

FAI first argues that, in light of *Rivet v. Regions Bank of Louisiana*, —— U.S. ——, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998), this court should vacate its judgment because it did not even have subject matter jurisdiction to hear its declaratory judgment action in the first place.[5] In *Rivet*, the Supreme Court applied the "well-pleaded complaint" rule to conclude that removal of a state court action to federal court can only occur when a federal question appears on the face of the plaintiff's complaint, and that a case cannot be removed simply on the basis of a federal defense. *Id.* at ——, 118 S.Ct. at 925. For a case to be removed on federal question grounds, a right or immunity created by the Constitution or Congress must be an essential element of the plaintiff's cause. *Id.; see also Gully v. First Nat. Bank in Meridian*, 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). Of course, as a corollary, *Rivet* recognized that a plaintiff may not evade removal by omitting from its pleading necessary federal questions. Such an artfully pleaded claim can still be removed "where federal law completely preempts a plaintiff's state-law claim." *Id.; see also Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–66, 107 S.Ct. 1542, 1547–48, 95 L.Ed.2d 55 (1987). Nevertheless, the Court distinguished "[a] case blocked by the claim preclusive effect of a prior federal judgment ... from the standard case governed by a completely preemptive federal statute [insofar as t]he prior federal judgment does not transform the

ly, principles of judicial estoppel would prevent FAI from urging an argument inconsistent with a position earlier taken upon which it prevailed. However, *Rivet* was not decided until just this year. In addition, subject matter jurisdiction is one of those issues which the court ought always to visit regardless whether it is raised by the parties. Thus, notwithstanding the "glaring inconsistency" of FAI's current argument with its previously asserted position, the rationale that normally justifies the invocation of judicial estoppel is not present here.

plaintiff's state-law claims into federal claims but rather extinguishes them altogether." *Id.* at ——, 118 S.Ct. at 926.

FAI maintains that, under *Rivet,* this court could not have had jurisdiction to hear FAI's declaratory judgment action, because that action was essentially defensive in nature, designed to "block" the plaintiffs in the Tennessee litigation from proceeding to trial by interposing discharge in bankruptcy (and the terms of this court's confirmation order) as a bar. *Rivet* teaches that such an essentially defensive theory is not sufficient grounds to give a federal court subject matter jurisdiction, so this court's judgment should be vacated because this court never had subject matter jurisdiction to enter it in the first place.

We disagree with FAI's application of *Rivet.* Had FAI asserted "discharge in bankruptcy" as an affirmative *defense* in state court litigation, and then sought to remove that litigation to a federal court, urging that defense as the basis for the federal court's subject matter jurisdiction, then *Rivet* might apply. *Rivet,* after all, addresses itself to the potentially improper invocation of subject matter jurisdiction in federal court. These are not our facts, however. The Tennessee litigation was *originated* in a *federal* district court under federal *diversity* jurisdiction. There was an independent basis for being in federal court already, so that, even if FAI *had* asserted "discharge in bankruptcy" as a defense, it would not have been the *defendant's* theory that would serve as the hook for keeping the case in federal court, but the diversity of citizenship between plaintiff and defendant.

FAI, of course, maintains that there was still no independent basis for the invocation of federal subject matter jurisdiction here in the Western District of Texas, because the sole basis for the declaratory action in federal court was the essentially defensive theory of discharge in bankruptcy, so that the logic of *Rivet* would still apply to this case. A declaratory judgment brought in federal court must have a basis for jurisdiction independent of the Declaratory Judgment Act itself, *see* 10B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE, § 2755 (West 1983) ("[T]he Declaratory Judgment Act merely makes a remedy available and does not confer jurisdiction if it does not otherwise exist"), and a purely defensive theory such as discharge in bankruptcy fails to afford such a basis, especially after *Rivet.* But that argument assumes that an action to enforce the discharge injunction is essentially defensive in nature. The Fifth Circuit has ruled recently, however, that an action to enforce the discharge is substantive in nature, and affords the federal courts an independent basis for entertaining jurisdiction over an *original action* premised on enforcing the discharge injunction. *Insurance Co. of North America v. NGC Settlement Trust & Asbestos Claims Management Corp. (Matter of National Gypsum Co.),* 118 F.3d 1056 (5th Cir.1997).

In *National Gypsum,* the successor in interest to the debtor brought an action seeking declaratory judgment that certain claims brought against it were barred by the confirmation order in the prior underlying bankruptcy proceeding and the discharge injunction of 11 U.S.C. § 524. The Fifth Circuit found that "[t]he discharge injunction granted by section 524(a) is a substantive right conferred by the Bankruptcy Code, often enforced by a motion for contempt ... As such, the adversary proceeding is a federal cause of action, asserting a statutory right under the Bankruptcy Code." *Id.* at 1063–64.

In the original decision this court issued, we determined that the court had subject matter jurisdiction to interpret and enforce its confirmation order—a determination of essentially the same character as that made by the Fifth Circuit in *National Gypsum.* FAI's original action was one essentially to enforce the discharge injunction and other injunctive provisions of this court's confirmation order. This court did not take jurisdiction based on any affirmative defense asserted by FAI, but rather based on the substantive rights which this court believed both the Bankruptcy Code and this court's prior order conferred on FAI. Our ruling in the original *Fairchild* decision in essence presaged the holding of the Fifth Circuit in *National Gypsum,* a decision which we believe to be entirely consistent with the Su-

preme Court's decision in *Rivet.* And it is *National Gypsum* and not *Rivet* which controls the subject matter jurisdiction issue FAI here raises.

This court had subject matter jurisdiction to hear the declaratory action brought *by* FAI. *See Rivet v. Regions Bank of Louisiana,* —— U.S. at ——, 118 S.Ct. at 925 (federal jurisdiction exists when a federal question is presented on the face of the *plaintiff's* complaint); *Insurance Co. of North America v. NGC Settlement Trust & Asbestos Claims Management Corp. (Matter of National Gypsum Co.),* 118 F.3d at 1063 (declaratory judgment action brought on confirmation order and discharge injunction a core proceeding under 28 U.S.C. § 157(b)(2)). If, as, and when another Fairchild aircraft falls out of the sky and FAI is made the defendant in a non-bankruptcy state court law suit, *Rivet* confirms that FAI will not be able to *remove* that suit to a federal court based on the affirmative defense of the preclusive effect of this court's prior confirmation order. *Rivet v. Regions Bank of Louisiana,* —— U.S. at ——, 118 S.Ct. at 925 (a case may not be removed to federal court based on a federal defense even if the defense is anticipated by the plaintiff's complaint). But with respect to the action which generated this court's original decision, now sought to be vacated, we are comfortable that it is *National Gypsum,* and not *Rivet,* which is controlling, and that this court did indeed have subject matter jurisdiction to enter the decision that it did. *Rivet* thus affords no basis for compelling *vacatur* of this court's decision.

II. SHOULD THE FACT THAT FAI ENTERED INTO A SETTLEMENT OF THE TENNESSEE LITIGATION PREVENT FAI FROM OBTAINING A *VACATUR* OF THIS COURT'S ORIGINAL DECISION?

■ The Supreme Court in *Bonner Mall* held that settlement of an action on appeal is generally not grounds for *vacatur* of the lower courts' decisions. *Bonner Mall,* 513 U.S. at 25–27, 115 S.Ct., at 392. The parties in *Bonner Mall* agreed that *vacatur* is proper when a controversy becomes moot "due to

circumstances unattributable to any of the parties [and when] mootness results from the unilateral action of the party who prevailed in the lower court." *Id.,* at 25, 115 S.Ct. at 391; *see also United States v. Munsingwear, Inc.,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950) ("[vacatur] clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance"). The question presented, however, was whether a settlement of the matter on appeal, entered into voluntarily by the losing party and rendering the controversy moot, is sufficient grounds for the extraordinary remedy of *vacatur.* *Bonner Mall,* 513 U.S. at 23, 115 S.Ct. at 390. The court held that:

> The principal condition to which we have looked [in determining whether to vacate] is whether the party seeking relief from the judgment below caused the mootness by voluntary action ... Where mootness results from settlement ... the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. The judgment is not unreviewable, but simply unreviewed by his own choice. The denial of vacatur is merely one application of the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks.

*Id.* at 24–25, 115 S.Ct. at 391–92 (internal cites omitted). The Court acknowledged that the respondent, who had won below, had a hand in entering the settlement.[6] But the court concluded that, while the parties' mutual entry into the settlement may "in some sense put them on even footing, ... the petitioner's case needs more than that ... Petitioner's voluntary forfeiture of review constitutes a failure of equity that makes the burden decisive, whatever respondent's share in the mooting of the case might have been." *Id.* at 26, 115 S.Ct. at 392.

On the face of it, FAI finds itself in precisely the same predicament. It was the losing party with respect to the judgment which it now seeks to be vacated, and it

6. As they say, it takes two to tango.

seeks that *vacatur* because it has entered into a settlement which has rendered the appeal of that judgment moot. To reiterate the Court's statement, it appears that FAI may have rendered the judgment of this court unreviewable by its own choice, to wit, its decision not to further pursue appeal. *Id.,* at 26, 115 S.Ct. at 392.

But, to paraphrase another venerable authority (Lewis Carroll), things are not always as they seem. The settlement that triggered FAI's present motion to vacate was not a settlement of the issue on appeal from this court. It was, instead, a settlement of the very non-bankruptcy litigation that FAI had sought to forestall in the initial adversary proceeding in this court. FAI could not obtain an appellate ruling on the issue in time to keep it from having to go to trial. In short, its appeal was actually rendered moot not by its settlement, but by the passage of time. Once it was forced to go to trial, it mattered little whether this court's decision was affirmed or not. FAI was forced to go to trial in a non-bankruptcy forum in Tennessee with neither the benefit of the injunction they originally sought in this court nor the benefit of appellate review of this court's denial of that very same declaratory relief.

If that were not enough, FAI then had the good fortune of being the *prevailing* party in the Tennessee litigation. Upon the entry of judgment in FAI's favor, the appeal of this court's decision became that much less of an actual case or controversy for the district court before which the appeal of this court's decision was pending. At that point, the posture of the case much more closely resembled *Munsingwear* than *Bonner Mall.*[7] FAI was the "losing party" *vis-a-vis* the declaratory judgment action brought in this court, but the "winning party" *vis-a-vis* the successor liability litigation brought in the Tennessee district court.

The Tennessee plaintiffs (who had lost), then appealed the adverse judgment to the Sixth Circuit. While that appeal was pending, the Sixth Circuit ordered the parties to mediation. It was in the context of *that* litigation that FAI entered into a settlement, the effect of which was to render the appeal of this court's ruling, still pending in the district court, to be, to paraphrase Gilbert & Sullivan, not only "merely moot, but 'twas quite sincerely moot.'"

FAI had neither "slept on its rights" by not prosecuting its appeal nor had it entered into a settlement of the litigation in the Western District of Texas. *Cf. Karcher v. May,* 484 U.S. 72, 108 S.Ct. 388, 98 L.Ed.2d 327 (1987) (declining to vacate where losing party did not even appeal). To the contrary, FAI was forced to swallow the bitter medicine of its loss in this court by proceeding to trial, and was fortunately able to win anyway. Its decision to settle had the obvious benefit of preserving whatever benefits accrued from its having prevailed at the trial level in Tennessee, and its loss in this court had no effect whatsoever on either the value of its win or its chances of reversal on appeal in the Sixth Circuit.

One of the conditions of the Settlement between FAI and the plaintiffs in the Tennessee action was the *vacatur* of this court's prior opinion. This was, no doubt, a condition upon which FAI itself insisted, because the successor liability suit that FAI ultimately settled in the Sixth Circuit is not the only successor liability suit that FAI may face (a prospect contemplated by our prior decision). The Settlement also rather decisively mooted its appeal here in the Western District of Texas—for of what use is a decision with regard to the efficacy of the discharge *vis-a-vis* litigation which has already been tried to judgment, appealed, and settled? Without an appeal, however, this court's decision ruling that FAI had no protection from successor liability suits from either the discharge injunction or this court's prior confirmation order becomes *final,* and enjoys potentially preclusive effect in any *later* successor liability litigation in which FAI may become embroiled. *See Preiser v. Newkirk,* 422 U.S.

---

7. It will be recalled that, in *Munsingwear,* the United States complained of being bound by the preclusive effect of a judgment entered in a related proceeding, rendered moot by legislative action. The Supreme Court, in *dicta,* advised the United States that it had little of which to complain—that it "should have" sought *vacatur* of the lower court decision once the appeal was rendered moot. *Munsingwear,* 340 U.S., at 39, 71 S.Ct., at 106.

395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975).

The Supreme Court in *Bonner Mall* stated that, when *vacatur* is sought, "[i]t is the petitioner's burden, as the party seeking relief from the status quo of the [ ] judgment [below], to demonstrate not merely equivalent responsibility for the mootness, but *equitable entitlement* to the extraordinary remedy of *vacatur.*" *Bonner Mall,* 513 U.S., at 26, 115 S.Ct., at 392 (emphasis added). Voluntary forfeiture of review certainly constitutes "a failure of equity that makes the burden decisive," as the Supreme Court held, but the circumstances of this case can hardly be characterized fairly as a "voluntary forfeiture of review." What, after all, was FAI to do? Refuse settlement of a case in which it had prevailed (*i.e.,* the Tennessee litigation)? Insist on proceeding with the appeal in the Western District of Texas without an opponent, hoping that the district court here in Texas would not consider the appeal moot? Demand that the settling plaintiff continue pursuing the appeal? The Supreme Court would hardly lay down so harsh a rule, and said as much in *Bonner Mall:* "This is not to say that vacatur can never be granted when mootness is produced in that fashion [*i.e.,* by reason of settlement]. As we have described, the determination is an equitable

one, and exceptional circumstances may conceivably counsel in favor of such a course. It should be clear from our discussion, however, that those circumstances do not include the *mere* fact that the settlement agreement provides for vacatur ..." *Bonner Mall,* 513 U.S. at 29, 115 S.Ct., at 393 (emphasis added). The circumstances which motivated a proviso for *vacatur* in the settlement FAI made in the Tennessee litigation did not spring from a mere desire to avoid the *stare decisis* effect of the lower court ruling (the apparent motivation for the *vacatur* sought in *Bonner Mall* ), but to assure that FAI would, if ever the need arose, yet have its day in court to litigate (with full right to appellate review) the efficacy of the discharge injunction and this court's confirmation order *vis-a-vis* successor liability suits.[8]

To be sure, this court hardly takes the issue of *vacatur* lightly, especially with respect to this particular judgment. The *Fairchild* decision represents an effort by this court to significantly advance the debate regarding the treatment of so-called "future claims" in bankruptcy, a debate which has divided courts and commentators for a number of years now, and which triggered even the attention of the National Bankruptcy Review Commission: [9]

---

**8.** As the Supreme Court has noted, "vacatur clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance." *U.S. Bancorp v. Bonner Mall Partnership,* 513 U.S. at 22–23, 115 S.Ct. at 390; *citing United States v. Munsingwear, Inc.,* 340 U.S. at 40, 71 S.Ct. at 107, 95 L.Ed. at 41 (1950).

**9.** The Commission issued the following recommendations to Congress with regard to the treatment of future claims:

Definition of Mass Future Claim—A definition of "mass future claim" should be added as a subset of the definition of "claim" in 11 U.S.C. § 101(5). "Mass future claim" should be defined as a claim arising out of a right to payment, or equitable relief that gives rise to a right to payment that has or has not accrued under nonbankruptcy law that is created by one or more acts or omissions of the debtor if: (1) the act(s) or omission(s) occurred before or at the time of the order for relief; (2) the act(s) or omission(s) may be sufficient to establish liability when injuries ultimately are manifested;(3) at the time of the petition, the debtor has been subject to numerous demands for pay-

ment for injuries or damages arising from such acts or omissions and is likely to be subject to substantial future demands for payment on similar grounds; (4) the holders of such rights to payments are known or, if unknown, can be identified or described with reasonable certainty; and (5) the amount of such liability is reasonably capable of estimation.

Protecting the Interests of Holders of Mass Future Claims—The Bankruptcy Code should provide that a party in interest may petition the court for the appointment of a mass future claims representative.

The Bankruptcy Code should provide that a mass future claims representative shall have the exclusive power to file a claim or claims on behalf of the class of mass future claims (and to determine whether or not to file a claim), to cast votes on behalf of the holders of mass future claims and to exercise all of the powers of a committee appointed pursuant to § 1102. However, a holder of a mass future claim may elect to represent his, her, or its own interests and may opt out of being represented by the mass future claims representative.

Determination of Mass Future Claims—Section 502 should provide that the court may estimate

The Commission, in its full report, had the following to say with regard to future claims:

Massive Tort or contract liabilities can have an enormous impact on otherwise viable enterprises that are vital to the American economy. Parties have found that traditional individual tort or contract litigation for mass torts or mass contract is unwieldy and too expensive for all parties, and has forced them to seek more efficient alternatives. The bankruptcy system offers a structured system to manage multiple liabilities and has provided a forum for companies with massive liabilities to do so. ... The fact pattern is not unique to asbestos; manufacturers of other products also must find ways to deal with mass claimants alleging injury or damages from products such as silicone implants, polybutylene pipe, airplanes, and intrauterine devices, and some are resorting to bankruptcy to do so.

Treating massive claims is inherently complicated, partly because of the sheer number of the claims. In addition, a more difficult conceptual issue arises with "future claims" that have not manifested but that are relatively certain to manifest in the future and are based on the prior acts of the debtor. A collective process that commences well before the damages or injuries develop might be the only opportunity for future claimants to receive any compensation, both because otherwise early claimants may take all the assets of the company or the company's extraordinary potential liability will dry up access to all capital needed for ongoing business operations. A company may not be able to preserve its going concern value and its work force if it is not able to deal collectively and definitively with all actions arising out of certain activity.

"Treatment of Mass Future Claims in Bankruptcy," REPORT OF THE NATIONAL BANKRUPTCY REVIEW COMMISSION (October 20, 1997), *available at* http://www.nbrc.gov/report/09bmass.html. The report contains a thorough collation of cases and commentaries addressing the difficult questions of notice, defining claims, equitable distribution, due process to unknown claimants, and other issues, many of which were the focus of this court's decision. Indeed, this court's decision is cited in the report for its recommendation to employ a class representative as a method of dealing with the thorny issue of notice to future claimants. *See id.,* at note 819.

The Supreme Court has said that "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a courts concludes that the public interest would be served by a *vacatur.*" *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.,* 510 U.S. 27, 33–34, 114 S.Ct. 425, 428, 126 L.Ed.2d 396 (1993) (Stephens, J., dissenting), *cited with approval in Bonner Mall, supra,* at 513 U.S., at 18, 115 S.Ct., at 386. The Court in *Bonner Mall* added that "[t]o allow a party who steps off the statutory path to employ the secondary remedy of vacatur as a refined form of collateral attack on the judgment would—quite apart from any considerations of fairness to the parties—disturb the orderly operation of the federal judicial system." *Id.* To be sure, the legal community has benefitted in part from this court's issuance of the decision which is now the subject of this *vacatur* request. Vacating that decision deprives future litigants of some of the value of that decision as precedent—though it probably does not deprive the decision of whatever continuing

mass future claims and also may determine the amount of mass future claims prior to confirmation of a plan for purposes of distribution as well as allowance and voting. In addition, 28 U.S.C. § 157(b)(2)(B) should specify that core proceedings include the estimation or determination of the amount of mass future claims. Channeling Injunctions—Section 524 should authorize courts to issue channeling injunctions.
Plan Confirmation and Discharge; Successor Liability—Sections 363 and 1123 should pro-

vide that the trustee may dispose of property free and clear of mass future claims when the trustee or plan proponent has satisfied the requirements for treating mass future claims. Upon approving the sale, the court could issue, and later enforce, an injunction to preclude holders from suing a successor/good faith purchaser.

REPORT OF THE NATIONAL BANKRUPTCY REVIEW COMMISSION (October 20, 1997), *reprinted at* http://www.abiworld.org/ legis/review/index.html.

persuasive power it might enjoy.[10] We thus approach the question of *vacatur*, especially of this particular decision, with considerable trepidation. By the same token, however, we do not believe that the judicial process would be well-served by leaving FAI, with its hands tied, to defend future suits, having been not only denied what would be a crucial defense, but also deprived of an exhaustive appellate review of whether the availability of that defense should have been denied by this court in the first place.[11] FAI, in this court's opinion, has adequately demonstrated its equitable entitlement to *vacatur* of this court's decision, and *vacatur* will accordingly be granted.

III. SOME POLICY CONSIDERATIONS

It is worth asking how this came about. The parties to the underlying dispute were unable to obtain a disposition of the appeal of this court's prior decision in time to avoid going forward with the Tennessee litigation. This is by no means the result of any shortcomings on the part the District Court.[12] Instead, this is a natural result of a system that imposes a somewhat unrealistic burden on the district courts to act both as trial courts of general jurisdiction and as courts of appeals on bankruptcy matters. Already faced with heavy trial dockets, in which criminal matters are fast-tracked in accordance with the defendant's right to a prompt trial, district courts are asked to allocate valuable judicial resources to hearing appeals of all manner of arcane issues from the bankruptcy court. The issue at the heart of the decision from which FAI appealed—namely, how to account for possible future claims arising from the debtor's pre-petition conduct—is one of the most complicated and unsettled questions in contemporary bankruptcy juris-

prudence, especially when it arises in the context of successor liability. *See* COMMISSION REPORT, *supra*. The District Court could have simply affirmed or reversed this court's decision without undertaking to review the issue critically, but that would have been an irresponsible course in the extreme. Indeed, if that is all that a district court were expected to do with bankruptcy appeals, then one might seriously question why we even bother requiring parties to pursue appeals in the first instance to the district court. The District Court in this instance tried to do its job properly, knowing that, whatever its conclusion, its decision would probably be reviewed at the circuit level.

This is problematic because district courts are established primarily as trial courts, not courts of appeals. Asking a district court to handle an appeal of this nature, and expecting it to "hurry," is not realistic. Circuit courts, on the other hand, are appellate courts, designed to handle such matters with expedience and free of the volume of time-consuming litigation occurring at the trial court level. Had this matter gone directly to the circuit level, it could have been disposed of much more quickly. What is more, the decision of the circuit court would have served as valuable precedent, binding throughout the circuit. A district court's ruling on a bankruptcy appeal enjoys little more precedential weight than does the original bankruptcy decision itself. *See* Paul M. Baisier & David G. Epstein, *Resolving Still Unresolved Issues of Bankruptcy Law: A Fence or An Ambulance*, 69 AM. BANKR. L.J. 525, 528–29 & nn. 17–19 (1995); *In re Shattuc Cable Corp.*, 138 B.R. 557, 565 (Bankr. N.D.Ill.1992). What has occurred in this case demonstrates the wisdom of the recom-

10. On this point, two observations are worthy of note. Firstly, the decisions of first instance courts rarely have true *precedential* value beyond the court which issued them. They bind no other court in the way that, say, decisions of the circuit do. Secondly, bankruptcy court decisions, issued as they are by courts with presumed expertise in the area, generally *do* enjoy *persuasive* authority. It is for this reason that the original decision of this court, though vacated by this ruling, ought not to have any less *persuasive* authority with regard to other courts that might have the same issues presented to them, and so ought to "remain on the books," as it were.

11. "A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. at 25, 115 S.Ct. at 391.

12. On the contrary, it is, if anything, a result of the District Court attempting properly to discharge the duty imposed on it by statute. *See* 28 U.S.C. § 158.

mendation made by the National Bankruptcy Review Commission that appeals from the bankruptcy court go straight to the circuit court of appeals. REPORT OF THE NATIONAL BANKRUPTCY REVIEW COMMISSION, § 3.1.3 (1997). Under the current arrangement, so long as district courts act responsibly in giving appeals from the bankruptcy courts the attention they require, the bankruptcy appellate process is often going to take a great deal of time. Of course, it would be a dereliction of statutorily imposed duty for a district court to take a rubber-stamp approach, and if this is how district courts regarded the bankruptcy appeals process, there would be no point in their reviewing appeals from the bankruptcy court. This belies the notion that the district court's role in the bankruptcy process is merely "supervisory." When a district court reviews a bankruptcy decision on appeal, it is supposed to do exactly what a circuit court does. But this only adds more work to the district court's docket and more *time and expense* to the bankruptcy appellate process—both suffer as a result. This of course raises the question whether, if the appellate review provided by the circuit court under Article III of the Constitution is sufficient for an adequate disposition of matters appealed from the bankruptcy court, the stop at the district court is a needless expenditure of time and judicial resources, serving no true constitutional purpose whatsoever. *See* Hon. Barbara Crabb, *In Defense of Direct Appeals: A Further Reply to Professor Chemerinsky,* 71 AM.BANKR.L.J.137 (1997). Regardless whether the current system serves any constitutional purpose, this case clearly demonstrates that it serves no practical purpose, and may actually be a detriment to the efficient administration of bankruptcy cases that Congress contemplated when it first enacted the Bankruptcy Reform Act of 1978.

### CONCLUSION

In light of the foregoing, while we emphasize the extraordinary nature of the relief requested, based on the equitable considerations affecting this matter, we hereby vacate this court's prior decision in *Fairchild Aircraft Inc. v. Campbell (In re Fairchild Aircraft Corporation),* 184 B.R. 910 (Bankr. W.D.Tex.1995).

**SO ORDERED.**