In re UNR INDUSTRIES, INC., Unarco Industries, Inc., UNR, Inc., UNR–ROHN, Inc. (Alabama), UNR–ROHN, Inc. (Indiana), Jobal Tube Co., Inc., UNR Products, Inc., and Folding Carrier Corp., Debtors.

UNR INDUSTRIES, INC., Plaintiff,

v.

James WALKER, Ernest Frost, Linda Frost, Cary Stewart, Judy Stewart, Robert Hendricks, and Catherine Hendricks, Defendants.

Bankruptcy No. 82 B 9841–9845, 82 B 9847, 82 B 9849 and 82 B 9851. Adversary No. 97 A 00904.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Sept. 25, 1998.

Malcolm Gaynor, Chicago IL, for Plaintiff.

Pamela S. Hollis, Chicago, IL, for Defendants.

Victor Grimm, Trustee.

### MEMORANDUM OPINION AND ORDER

ERWIN I. KATZ, Bankruptcy Judge.

This matter comes before the Court on the Plaintiff's Motion for Summary Judgment in the above-captioned Adversary Proceeding and for Judgment on the Plaintiff's Motion for Entry of Rule to Show Cause Why James Walker Should Not be Held in Civil Contempt. The adversary complaint and the motion for entry of rule to show cause were filed by the Plaintiff in response to a state court action commenced by the Defendants seeking recovery from the Plaintiff for injuries allegedly arising from exposure to silica. The Plaintiff filed this adversary proceeding to enforce injunctions and other relief on the grounds that any right to recovery the Defendants may have had for their injuries was discharged and barred by the confirmed plan of reorganization and injunction order entered in the UNR bankruptcy proceeding. The Plaintiff filed a motion for summary judgment and the Defendants filed a response in opposition. For the reasons stated below, the Court finds that several issues of material fact exist which preclude a finding that the Plaintiff is entitled to judgment as matter of law. The Motion for Summary Judgment and for Judgment on the Motion for Entry of a Rule to Show Cause is therefore denied.

### I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. sec. 157(b) and 28 U.S.C. sec. 1334. This matter is a core proceeding pursuant to 28 U.S.C. sec. 157(b)(2)(A) and (H) since it concerns the administration of the estate and is a proceeding affecting liquidation of the assets of the bankruptcy estate.

### II. DISCUSSION

#### A. Legal Standards Governing Summary Judgment

The purpose of summary judgment under Federal Rule of Civil Procedure 56 (adopted by Federal Rule of Bankruptcy Procedure 7056), is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Farries v. Stanadyne/Chicago Division,* 832 F.2d 374, 378 (7th Cir.1987); *Wainwright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Assoc. of Indianapolis,* 806 F.2d 146, 149 (7th Cir.1986). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Matsushita Elect. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Trautvetter v. Quick,* 916 F.2d 1140, 1147 (7th Cir.1990). The existence of factual disputes is sufficient to deny summary judgment only if the disputed facts are outcome determinative. *Jones Truck Lines, Inc. v. Republic Tobacco, Inc.,* 178 B.R. 999, 1003 (Bankr. N.D.Ill.1995). The burden is on the moving party to show that there is no such factual dispute. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552; *Matsushita,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *In re Chicago, Missouri & Western Ry. Co.,* 156 B.R. 567 (Bankr. N.D.Ill.1993). This burden is met when the record, as a whole, does not lead a rational trier of fact to find for the non-moving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." The respondent may not rest upon mere allegations or denials in its pleadings. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249–250, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (citations omitted).

Applying these standards to the instant motion, the Court finds that summary judgment is not appropriate. The Court concludes that it cannot determine the legal issues before it without resolving several key

issues of fact. Specifically, as discussed in Part C below, the Court must make of findings of fact as to the medical relationship of silicosis to asbestosis and as to the knowledge of the Defendants regarding the UNR bankruptcy proceedings, the manifestation of their illnesses, and the due process afforded to them by the trust fund recovery process. The Court cannot make these findings without additional evidence and cannot conclude that the Plaintiff is entitled to judgment as a matter of law. The Motion for Summary Judgment is therefore denied.

### B. Statement of Material Uncontested Facts

On July 29, 1982, the Debtor UNR Companies [1] filed voluntary petitions under Chapter 11 of the Bankruptcy Code. The UNR Companies operated their businesses and managed their properties as debtors-in-possession until June 2, 1989, when their plan of reorganization was confirmed.[2]

The Plaintiff UNR Industries, Inc., is the successor corporation to Unarco Industries, Inc. In 1992, Unarco Industries was merged into UNR Industries, Inc. At one time, Unarco Industries operated several affiliated companies engaged in various manufacturing businesses. Among the operations of Unarco was an asbestos manufacturing plant located at 1111 West Perry Street, Bloomington, Illinois. In 1962, Unarco discontinued the production of substantially all of its asbestos products and the remaining production was discontinued in 1970. As part of the confirmation of the plan of reorganization in 1989, a trust fund was created to provide recovery for persons with asbestos-disease claims against Unarco and the other UNR Companies.

The Defendants, Ernest Frost, Carl Stewart, and Robert Hendricks are former employees of Unarco Industries, Inc. The Defendants Linda Frost, Judy Stewart, and Catherine Hendricks are their spouses. The Defendant James Walker is their attorney. On May 15, 1997, the Defendants filed an action in state court titled *Ernest Frost, et al v. Unarco Industries, Inc., et al.*, Case No. 97 L 80, before the Circuit Court of McClean County, State of Illinois.[3] This action seeks recovery from Unarco Industries, Inc., for pulmonary fibrosis allegedly contracted as a result of exposure to silica while working at the Bloomington asbestos plant. The state court complaint also contains multiple counts on behalf of each Defendant seeking recovery from several other entities which are not UNR Companies for exposure to asbestos while working at the Bloomington plant.[4]

In response to this state court action, the Plaintiff UNR Industries, Inc., filed this adversary complaint seeking to enforce the discharge injunction under 11 U.S.C. § 524 and the injunction order entered in connection with the confirmation of the UNR Companies plan of reorganization. The complaint alleges that the express language of the plan and the accompanying Findings of Fact, Conclusions of Law and Order of Injunction limit all actions for "asbestos disease claims" to recovery from the asbestos disease trust fund

1. The UNR companies consist of UNR and ten of its affiliates, including UNR Industries, Inc.; Unarco Industries, Inc.; UNR, Inc.; UNR–ROHN, Inc. (Alabama); UNR–ROHN, Inc. (Indiana); Jobal Tube, Inc.; and Folding Carrier Corp.

2. The Statement of Material Uncontested Facts submitted by the Plaintiff consists of eleven short paragraphs. Paragraphs 1–5 state only very well-settled and indisputable facts as to the petition date and the language of the UNR plan and injunction order. Paragraphs 6–11 deal with facts relating to the filing date of the Defendants' state court complaint, the identity of the defendants named in that action, a statement of the allegations in the state court complaint; and a reference to the medical reports submitted to the Plaintiff by the Defendants. The Plaintiffs also attach copies of additional relevant pleadings to

their statement of facts. The Court takes judicial notice of such additional pleadings which constitute the record before it. Certain factual statements included herein are taken from this record.

3. Although the former employees and their spouses are the plaintiffs in the state court litigation, they will be referred to as the "Defendants" along with their attorney James Walker in this opinion since they are the Defendants in the adversary proceeding.

4. The complaint also names as defendants Owens Corning; Abex Corp.; Pneumo Abex Corp.; Metropolitan Life Insurance Co.; Owens–Illinois, Inc.; Pittsburgh Corning Corp.; Raymark Industries, Inc.; and Illinois Central Railroad Co.

and that no action may now be brought against the successor entity UNR Industries based on the pre-petition conduct of Unarco Industries, Inc.

The plan defines "asbestos-disease claims" as:

All alleged liabilities or obligations (under any theory of law, equity or admiralty) for death, personal injury, personal damages or punitive damages (whether physical, emotional or otherwise), whether or not included in the definition of "claim" in § 101(4) of the Code, arising out of exposure to asbestos, and arising from acts or omission by one or more of the Debtor or the Debtor's predecessors in interest prior to the Effective Date, regardless of when the sickness, injury or disease which gives rise to such liability or obligation, becomes or will become manifest. . . .

The injunction order entered in connection with the confirmation of the plan provides that:

All entities are permanently restrained and enjoined from taking any action whatsoever for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any Claims, Interests, Asbestos–Disease Claims, or Asbestos–Property Claims (other than actions brought to enforce any right or obligation under the Plan, which action shall be in conformity with compliance with the provisions of the Plan) against the Debtors, any Property of the Estates of the Debtors, any of the Debtors Affiliates, New UNR, . . . This injunction shall be construed as broadly as the law and the English language permit. . . .

The Plaintiff asserts that if the Defendants in fact contracted pulmonary fibrosis as a result of exposure to silica, this would be an asbestos-disease claim which is covered by the plan and the trust fund provisions and therefore the Defendants' state court action violates the discharge injunction granted to it under 11 U.S.C. § 524 and the injunction order. The Plaintiff filed its motion for summary judgment on the adversary complaint and for judgment on its motion for rule to show cause alleging that there are no materi-al issues of fact and that it is entitled to judgment as a matter of law.

The Defendants have provided the Plaintiff UNR Industries with medical reports for Ernest Frost, Cary Stewart and Robert Hendricks. These reports all make reference to the presence of or the possibility of asbestosis or asbestos disease in the patient. None of these medical reports make any reference to silica, silicosis or pulmonary fibrosis. Attached to each of the medical reports is a "UNR Asbestos–Disease Claims Trust Proof of Claim Form" which contains the Defendant's address, age, social security number, spouse's name, dependant's name, attorney's information, dates of employment at the Bloomington plant, and a checkmark indicating whether the Defendant was exposed to products other than UNR products.

The state court complaint alleges the following dates of discovery for the Defendants' illnesses: Count 8 (Linda Frost v. Unarco) alleges that Linda Frost neither knew nor should have known that her husband had contracted pulmonary fibrosis until after March 19, 1997; Count 12 (Judy Stewart v. Unarco) alleges that Judy Stewart first knew that her husband had contracted pulmonary fibrosis after August 27, 1996; Count 16 (Catherine Hendricks v. Unarco) alleges that Catherine Hendricks neither knew nor should have known that her husband had contracted pulmonary fibrosis until after March 19, 1997. With respect to the Defendant employees, Count 7 (Ernest Frost v. Unarco), Count 11 (Cary Stewart v. Unarco), and Count 15 (Robert Hendricks v. Unarco ) do not specifically allege when the claimants first became aware or should have become aware that they had contracted pulmonary fibrosis as a result of exposure to silica. These counts state only that the Defendants were not aware at the time of their employment that silica would become trapped in their bodies. The medical reports submitted by the Plaintiff and the other counts of the state court complaint indicate that Frost was employed by Unarco from 1969 to 1970; Stewart was employed from 1968 to 1969; and Hendricks was employed in 1965.

The Defendants filed an answer to the adversary complaint denying that their silico-

sis claims were asbestos disease claims and arguing that the plan and injunction order did not bar their recovery from UNR Industries. The Defendants filed a response in Opposition to the Motion for Summary Judgment, but failed to comply with Local Rule 402(N) governing summary judgment. The response in opposition does not contain (1) an opposing affidavit or other material referred to in FRCP 56(e); (2) a concise response to the movant's statement of facts; or (3) a statement of additional facts that require denial of summary judgment. The response makes various allegations and arguments for denial of the motion for summary judgment, but it fails to set forth specific facts showing that there is a genuine issue for trial as required by Fed.R.Civ.P. 56(e). The only additional documents attached to the response are the disclosure statement and plan approved and confirmed in the UNR case; a pre-confirmation Report and Comment from the Legal Representative for Unknown Putative Asbestos–Related Claimants; and a complaint filed in state-court against Unarco and other parties for personal injury sustained during the construction of a building or structure in Romeoville, Illinois, on July 10, 1990, by one Michael Brown.

■ Due to the Defendant's failure to properly respond to the motion for summary judgment, as required by Local Bankruptcy Rule 402(N), this Court finds that all material facts set forth in the Plaintiff's statement of uncontested material facts are deemed admitted. These "uncontested" facts are set forth above. This does not mean, however, that summary judgment is appropriate. *Wienco v. Katahn Assoc., Inc.*, 965 F.2d 565, 568 (7th Cir.1992).

### C. Factual Issues Precluding Entry of Summary Judgment

■ In order to identify the material issues of fact, it is necessary to outline the legal issues underlying the motion for summary judgment. The basic thrust of the adversary complaint is that the Defendants' state court litigation is barred by the terms of the confirmed plan which limits asbestos recoveries to the asbestos trust fund and that the underlying claims were discharged upon plan confirmation so that no right of recovery exists. For this premise to be true, the Court must find that as matter of law (1) the claims for pulmonary fibrosis from exposure to silica are asbestos-disease claims as defined in the plan or (2) a future claim for injuries from silica exposure which was not manifest at the time of confirmation is a debt for a claim within the meaning of § 524 of the Bankruptcy Code that was discharged with due process of law. For the reasons set forth below, the Court concludes that it cannot answer these questions of law without additional factual information.

### 1. Whether the claim for pulmonary fibrosis from exposure to silica is an asbestos-disease claim that is discharged under the plan and limited to recovery from the asbestos-disease trust fund?

Under the plain language of the UNR confirmed plan and the related injunction order,[5] asbestos-disease claims are discharged as to the Debtor UNR Companies and their successors in interest. Any recovery for such claims, defined as "liability arising out of exposure to asbestos," is expressly limited to the asbestos-disease trust fund

---

**5.** The UNR confirmed plan defines "asbestos-disease claims" as: "All alleged liabilities or obligations (under any theory of law, equity or admiralty) for death, personal injury, personal damages or punitive damages (whether physical, emotional or otherwise), whether or not included in the definition of "claim" in § 101(4) of the Code, arising out of exposure to asbestos, and arising from acts or omission by one or more of the Debtor or the Debtor's predecessors in interest prior to the Effective Date, regardless of when the sickness, injury or disease which gives rise to such liability or obligation, becomes or will become manifest...."

The injunction order further provides that: "All entities are permanently restrained and enjoined from taking any action whatsoever for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any Claims, Interests, Asbestos–Disease Claims, or Asbestos–Property Claims ... against the Debtors, any Property of the Estates of the Debtors, any of the Debtors Affiliates, New UNR, ... This injunction shall be construed as broadly as the law and the English language permit...."

under the confirmed plan. If pulmonary fibrosis, allegedly from exposure to silica, is really a personal injury arising out of exposure to asbestos (regardless of when the sickness, injury or disease became manifest) then the claim for such injury is limited to recovery from the asbestos trust fund (regardless of whether an undiscovered personal injury is included in the bankruptcy code definition of claim). The true question then is whether pulmonary fibrosis in fact arises from exposure to asbestos.

The only factual evidence before the Court with respect to the Defendants' illnesses, symptoms or disease is the medical reports attached to the Plaintiff's statement of uncontested facts. The medical reports all state that the Defendants were exposed to asbestos and have some form of asbestos-related illness. The Plaintiff correctly points out that the reports do not make any reference whatsoever to silica or pulmonary fibrosis. The Court also notes, however, that the medical reports do not state that the Defendants do not or could not have silica-related illnesses. Even if the Court accepts as true everything in the medical reports, which it must do since the Defendants failed to file a proper response setting forth contested facts, this would only establish that the Defendants have asbestos claims. It does not establish that they do not have pulmonary fibrosis claims relating to exposure to silica or that pulmonary fibrosis can only be caused by exposure to asbestos.

This record is simply inadequate to establish that the Defendant's claims must be from exposure to asbestos. There is a genuine issue of material fact which must be determined by the trier of fact and the Court cannot conclude that the Plaintiff is entitled to judgment as a matter of law. Summary judgment is therefore inappropriate.

**2. Even if injuries from exposure to silica are not asbestos-disease claims, are they pre-petition claims within the meaning of 11 U.S.C. § 524 that were discharged by operation of law upon confirmation of the UNR Companies plan?**

Alternatively, the Plaintiff asserts that even if the Defendants' injuries are not asbestos related, the claims are still for pre-petition injuries which were discharged upon confirmation by operation of law. This facially simple argument requires a complicated analysis of what is a "claim" under the Bankruptcy Code,[6] including (1) whether the Defendants' claims arose pre-petition when the illness was not manifest until post-confirmation and (2) whether discharge of such an unknown tort claim affords due process of law to the claimant when there is no recovery mechanism provided under the plan. In order to rule on these legal issues, the Court must examine the factual details regarding the Defendants' awareness of their illnesses, notice of the bankruptcy proceeding, and ability to make a claim under the plan. The record before the Court, however, does not provide adequate factual information to resolve these issues. Therefore, summary judgment is inappropriate.

The discharge of a claim for personal injury which has not yet become manifest to the injured party raises several competing policy considerations. The fresh start policy calls for a broad view of claims resulting in a broad discharge, while considerations of due process and fairness dictate that discharge of a claim that is unknown to the holder in time to be asserted against the bankruptcy estate is inequitable. The plain language of the definition of claim includes unliquidated, contingent, unmatured and disputed claims. Does this also include claims whose very

---

6. Section 524(a)(2) of the Bankruptcy Code provides for an injunction against the commencement of an action to collect on a *debt* discharged under § 1141(d)(1). Section 101(12) defines a *debt* as "liability on a *claim*." Section 101(5)(a) defines *claim* as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." Thus, only debts

for claims as defined in § 101 are discharged under § 524. The injunction order entered in the case also provides that entities are permanently restrained and enjoined from taking any action whatsoever for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any Claims, Interests, Asbestos–Disease Claims, or Asbestos–Property Claims.

existence is unknown? The UNR plan expressly states that it will avoid the issue with respect to asbestos-disease claims by providing that such claims are covered whether or not they are included in the definition of claim, regardless of when the injury becomes manifest. If the issue exists for asbestos claims, would it not also exist for other unknown tort claims? Can we presume that all other unknown tort claims are discharged as a matter of law or would they survive confirmation absent some express trust fund provision like that set up for asbestos claims?

The Plaintiff argues that this issue has been resolved in a prior appeal of the confirmation and injunction orders in the UNR case. *In Matter of UNR Industries, Inc.,* 20 F.3d 766 (7th Cir.1994), former employees of Unarco appealed the District Court's order dismissing their appeal from the Bankruptcy Court's orders regarding confirmation. The former employees argued that the treatment of unknown tort claimants as creditors under the trust fund violated the Bankruptcy Code and the Constitution. *Id.* at 770.[7] The Seventh Circuit declined to vacate the confirmation order and found that discharge of unknown tort claims in exchange for some form of recovery under the plan promoted productivity and compensation and did not create a drag on on-going operations that could cause the dissolution of positive business ventures. *Id.* at 771. The Court also stated that the formidable logistical problems it had foreseen in making provision for future claimants had been overcome in the UNR plan.[8] Thus it concluded that there was no absolute bar to the trust fund approach used in the UNR plan. *Id.*

In its decision to support the asbestos trust fund, the Seventh Circuit reasoned that there was no rationale for or benefit to be obtained from disallowing the handling of future asbestos claims under bankruptcy law. It balanced the competing policies of fresh start and due process and concluded that the trust fund recovery mechanism adequately served both.[9] *Id.*

In reaching its conclusion, the Court stated that the Bankruptcy Code seemed to contemplate such a result based upon the very broad and open definition of a claim. According to the Seventh Circuit, the definition of claim

"is capacious, to say the least. Attaching labels such as 'contingent' and 'unmatured' and 'disputed' to the interests of persons who will become sick in the future because of exposure to UNR's asbestos therefore does not put those interests beyond the power of the bankruptcy court."

*Id.* at 770. The Court used this broad definition to support its ruling that confirmation should not be vacated five years later when there has been significant reliance upon and substantial performance of the plan provisions and the plan should not be unwound on appeal absent powerful and compelling reasons. *Id.* at 770. The Court found no violation of the Bankruptcy Code or the Constitution in the asbestos trust fund arrangement that would compel such a result.

---

7. With respect to constitutionality, the Seventh Circuit held that the injuries, although not manifest, were in existence pre-petition making it a justiciable dispute, and that there was a real case or controversy relating to the disposition of the UNR companies' assets which was negotiated by undisputed current creditors. *Id.*

8. *See* discussion in *Matter of UNR Industries Inc.,* 725 F.2d 1111, 1119–20 (7th Cir.1984), dismissing appeal from *In re UNR Industries, Inc.,* 29 B.R. 741 (N.D.Ill.1983)(declining to appoint a legal representative for future asbestos claimants. As the plan negotiation process progressed further, the Bankruptcy Court did order the appointment of Kevin M. Forde on March 28, 1985 as legal representative to represent future asbestos claimants in the bankruptcy process. Mr. Forde's duties included (1) advising future claim-

ants about the case; (2) representing future claimants in the plan negotiation and confirmation process; (3) representing future claimants with respect to any motion to convert; and (4) exercising the powers and responsibilities of an official creditors committee.)

9. *See also* discussions by District Court and by Seventh Circuit recognizing competing interests and the need to provide some recovery mechanism in the plan if tort claims are to be addressed in the bankruptcy context. *In re UNR Industries, Inc.,* 29 B.R. 741, 744–748 (N.D.Ill. 1983) (declining to appoint a legal representative for unknown asbestos claimants although a representative was subsequently appointed on March 28, 1985), *appeal dismissed, Matter of UNR Industries, Inc.,* 725 F.2d 1111, 1118–21 (7th Cir.1984).

This decision, however, does not establish as a matter of law or as the law of this case that any future tort claim for an injury which occurred pre-petition was discharged by the UNR plan. Assume the Defendants' claims were for brain cancer caused by exposure to some UNR product not containing asbestos. Would the Seventh Circuit's ruling mandate a finding that these unknown tort claims were discharged by the plan. Such claims would clearly be outside the scope of the asbestos trust fund. Are these claimants simply out of luck? Or would the ability to discharge the claim hinge on the ability to make provision for them under the confirmed plan? Should the answer be different for silicosis than for other cancers? This issue was never before the Seventh Circuit.

Numerous other courts have struggled with the issue of discharging unknown tort claims and several different lines of reasoning and analyses have developed. Although by no means exhaustive, the following list includes the leading cases in this area.[10] *See e.g., Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1274–78 (5th Cir.1994); *U.S. v. LTV Corp. (In re Chateaugay Corp.)*, 944 F.2d 997, 1002–06 (2d Cir.1991); *Grady v. A.H. Robins Company*, 839 F.2d 198, 201 (4th Cir.), *cert. dismissed*, 487 U.S. 1260, 109 S.Ct. 201, 101 L.Ed.2d 972 (1988); *In re Amatex Corp.*, 755 F.2d 1034, 1041–43 (3d Cir.1985); *Schweitzer v. Consolidated Rail Corp.*, 758 F.2d 936, 941–43 (3d Cir.1985), *cert. denied* 474 U.S. 864, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985); *Avellino & Bienes v. M. Frenville Co. (Matter of M. Frenville Co., Inc.)*, 744 F.2d 332, 336–37 (3d Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985); *In re Kewanee Boiler Corp.*, 198 B.R. 519, 526–40 (Bankr.N.D.Ill. 1996); *In re Forty–Eight Insulations*, 58 B.R. 476, 477–78 (Bankr.N.D.Ill.1986); *In re Fairchild Aircraft Corp.*, 184 B.R. 910, 921– 33 (Bankr.W.D.Tex.1995), *vacated on other grounds* 220 B.R. 909 (Bankr.W.D.Tex.1998); *In re Piper Aircraft Corp.*, 162 B.R. 619, 622–29 (S.D.Fla.1994), *aff'd* 58 F.3d 1573 (11th Cir.1995); *Matter of Johns–Manville Corp.*, 68 B.R. 618, 626–29 (Bankr.S.D.N.Y. 1986), *aff'd in part and rev'd in part* 78 B.R. 407 (S.D.N.Y.1987), *aff'd sub nom. Kane v. Johns–Manville Corp.*, 843 F.2d 636 (2d Cir. 1988).

Some of these decisions arise in the context of the ability to discharge unknown tort claims while others are considering the appointment of a legal representative on behalf of the unknown tort claimants to participate in the bankruptcy proceeding.[11] Some courts focus on the definition of a pre-petition claim to find that such claims "arose" post-petition and thus were not discharged,[12] while others reason that unknown tort claims cannot be discharged without due process and meaningful notice of the proceeding in time to assert their rights.[13] Some of these cases are distinguishable from the instant matter in that they deal with allegations of

**10.** The National Bankruptcy Review Commission recently considered this issue and made various recommendations to Congress for dealing with mass tort claims in bankruptcy. For the full text of these recommendations and the Commission's Report, *see Report of the National Bankruptcy Review Commission,* (October 20, 1997), reprinted at *http://www.abiworld.org/legis/review/index.html and "Treatment of Mass Future Claims in Bankruptcy," Report of the National Bankruptcy Review Commission* (October 20, 1997), reprinted at *http://www.nbrc.gov/report/09mass.html.*

**11.** *See, e.g., In re Fairchild Aircraft Corp.*, 184 B.R. 910, 921–33 (Bankr.W.D.Tex.1995), *vacated on other grounds* 220 B.R. 909 (Bankr.W.D.Tex. 1998); *In re Kewanee Boiler Corp.*, 198 B.R. 519, 526–40 (Bankr.N.D.Ill.1996); and *Matter of Johns–Manville Corp.*, 68 B.R. 618, 626–29 (Bankr.S.D.N.Y.1986), *aff'd in part and rev'd in part* 78 B.R. 407 (S.D.N.Y.1987), *aff'd sub nom.*

*Kane v. Johns–Manville Corp.*, 843 F.2d 636 (2d Cir.1988), dealing with dealing with discharge and confirmation issues, and *In re Amatex Corp.*, 755 F.2d 1034, 1041–43 (3d Cir.1985); *In re Forty–Eight Insulations*, 58 B.R. 476, 477–78 (Bankr.N.D.Ill.1986), dealing with legal representative issue.

**12.** Among the courts taking this approach, there are three different views or tests applied to analyze when the claim arose: the state-law accrual test; the conduct test; and the pre-petition relationship test. Judge Schmetterer in *Kewanee* provides a detailed discussion of these various lines of case law. 198 B.R. at 526–40.

**13.** *See, e.g., In re Fairchild Aircraft*, 184 B.R. 910, 927–32 (Bankr.W.D.Tex.1995), *vacated on other grounds* 220 B.R. 909 (Bankr.W.D.Tex.1998); *Kewanee Boiler Corp.*, 198 B.R. 519, 534–539 (Bankr.N.D.Ill.1996).

defective product design pre-petition where the actual injury from such defect did not occur until post-petition.[14] Many others, however, deal with asbestos claims or similar mass torts where the injury or exposure was clearly pre-petition as it was in this proceeding.[15]

Despite the various permutations in fact patterns and reasoning, virtually all the cases conclude that unknown tort claims cannot be discharged and precluded from future recoveries unless their interests have been adequately represented within the bankruptcy proceeding. As noted by Judge Leif Clark in *Fairchild Aircraft*, 184 B.R. 910, 924 (Bankr.W.D.Tex.1995), the common thread of all these decisions is the concept of procedural fairness even though it is not always directly stated as such. This Court did not find any decision which held that it was permissible to discharge the claims of mass tort claimants whose pre-petition injuries were unknown at the time of confirmation when their interests were not represented in the bankruptcy proceeding and they were not entitled to receive a fair settlement or distribution under the proposed plan. *See also Kewanee*, 198 B.R. at 539–40 (reaching the same conclusion as to existing case law).

This Court therefore must determine what type of notice, representation and distribution would be required to satisfy the Defendants' rights to due process of law before discharging their claims. The Court in *Kewanee* recognized that different products and circumstances may require different forms of notice. 198 B.R. at 537. Assuming the alleged silicosis claims of the Defendants are factually distinct from asbestos-disease claims as discussed in Part C.1 above, it would seem that discharge absent a trust fund for silicosis claims may violate notions of fundamental fairness. There are, however, several additional factual questions regarding actual notice to these Defendants which are not answered by the record and

pleadings before this Court. Specifically, did the Defendants have knowledge of the UNR bankruptcy proceeding prior to confirmation; were they aware of their injuries from silica exposure at that time; did they also have claims for asbestos exposure; when did they become aware of those asbestos claims; have they submitted a claim against the UNR asbestos-disease trust fund; and to what extent are their injuries from silica exposure separate and distinct from the symptoms and injuries experienced as a result of asbestos exposure?

Because the critical analysis of the discharge issue revolves around due process and notice, these questions represent material issues of fact which preclude the entry of summary judgment at this time. The record does not provide any evidence on these points which would enable the Court to find that the Plaintiff is entitled to judgment as a matter of law. Summary judgment is therefore inappropriate.

## III. CONCLUSION

The Plaintiff's request for summary judgment must be denied due to the existence of genuine issues of material fact which must be determined by the trier of fact. Summary judgment is therefore inappropriate. The Plaintiff's Motion for Summary Judgment and for Entry of Judgment On Rule to Show Cause Why James Walker Should Not Be Held In Contempt is DENIED.

**14.** *See, e.g., In re Piper Aircraft*, 162 B.R. at 627; *Fairchild*, at *id.*; *Kewanee*, at *id.*

**15.** *See also In re Amatex Corp.*, 755 F.2d 1034, 1041–43 (3d Cir.1985); *Schweitzer v. Consolidated Rail Corp.*, 758 F.2d 936, 941–43 (3d Cir. 1985), *cert. denied* 474 U.S. 864, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985); *In re Forty–Eight Insula-tions*, 58 B.R. 476, 477–78 (Bankr.N.D.Ill.1986); *Matter of Johns–Manville Corp.*, 68 B.R. 618, 626–29 (Bankr.S.D.N.Y.1986), *aff'd in part and rev'd in part* 78 B.R. 407 (S.D.N.Y.1987), *aff'd sub nom. Kane v. Johns–Manville Corp.*, 843 F.2d 636 (2d Cir.1988).